# Ronald Audette and James Sexton v. Kenneth G. Greer, et al.

[360 A.2d 66]

No. 310-75

Present: Smith, Daley, Larrow and Billings, JJ. and Shangraw, C.J., (Ret.), Specially Assigned

Opinion Filed April 28, 1976

*Wool & Murdoch*, Burlington; *Robert J. Canavan*, International Brotherhood of Police Officers, Boston, Massachusetts, of counsel, for Plaintiffs.

*Ewing & Spokes*, Burlington, for Defendants.

**Smith, J.** The present case arises as a result of a decision of the Board of Trustees of the Village of Essex Junction directing Village Manager Kenneth Greer to "investigate and cut spending within the police department." Mr. Greer, after reviewing the Village finances, decided to lay off, effective September 15, 1975, the two most recently hired patrolmen, plaintiffs Audette and Sexton. After reaching this conclusion, Greer called in Village Chief of Police Domenic Arena to discuss the matter. Arena expressed his strong disapproval of the plan but was unable to dissuade Greer. Therefore, on August 29, 1975, letters signed by Arena and Greer were delivered to Officers Audette and Sexton informing them of their dismissals and that, "This layoff is strictly for economic reasons and has nothing to do with your performance as policemen."

On September 8, 1975, the Village Board of Trustees held a public meeting at which the layoffs were discussed and given final approval. Plaintiffs Audette and Sexton then filed a complaint in Chittenden Superior Court alleging that the Village authorities had violated their rights as police officers under 24 V.S.A. §§ 1931–33 and that the proffered reason for their release, that of "economic necessity", was not justified by the circumstances. Plaintiffs sought reinstatement and payment of wages lost as a result of their removal. Hearing was held in superior court on September 24, 1975. At trial, defendants sought to justify their invocation of the "economic necessity" rationale provided by § 1933 on the grounds that a police protection contract with the Town of Essex had been terminated resulting in a loss of $1,000.00 a month in payments. In addition, defendants argued that the force was too large, had accrued undue overtime, and that the funds could be better spent elsewhere.

To counter the above evidence, plaintiffs pointed out the fact that the police budget had been overspent in the prior three years and yet no layoffs had been made. Furthermore, as of August 25, 1975, the Village was well within both its general and police budgets. Lastly, plaintiffs contended that the loss of the Town contract did not per se lessen the need for policemen in the Village since the Village had not increased the force when it acquired the contract in April, 1974. On the

basis of these facts, then, the superior court issued its order, dated September 30, 1975, ruling that the Village had not complied with 24 V.S.A. §§ 1931–33 and that the plaintiffs were entitled to be reinstated with full pay. Defendants have filed their appeal from this determination and order.

The questions presented here for our resolution are: (1) Was the conclusion that the Village authorities' action in laying off plaintiffs was not justified by reasons of "economic necessity" erroneously arrived at by the Superior Court? (2) Whether the lower court's order, in light of 24 V.S.A. § 1933, reinstating plaintiff Sexton constitutes error? For reasons developed in the body of this opinion, we answer the first question negatively and the second question in the affirmative.

## I.

It is obvious that what is at issue here is the meaning to be attributed to the Legislature's use in § 1933 of the phrase "economic necessity". In this process of statutory interpretation we are guided by the rule that the Legislature's objective is to be found from a study of the act—its subject matter and consequences. Furthermore, it is essential that the construction not be such that will render the act ineffective or lead to irrational consequences. *Rutland Cable T.V., Inc.* v. *City of Rutland,* 122 Vt. 1, 3, 163 A.2d 117 (1960) ; *Montpelier Savings Bank & Trust Co.* v. *Mitchell,* 122 Vt. 85, 88, 165 A.2d 369 (1960) ; *In re Petitions of Bibens,* 115 Vt. 383, 61 A.2d 598 (1948).

Appellants contend here that the language employed in § 1933 was meant to provide a method by which the Village could reduce the size of its police force if it determined that it was excessive in size. To buttress their argument, appellants point to 24 V.S.A. § 1236 which vests authority over the police department in the town manager. On the basis of this provision, appellants assert that any determination of the Village manager as to the police force is subject to review only in terms of a "good faith" standard.

It is our view, however, that appellants' interpretation would effectively frustrate the intended function of 24 V.S.A. §§ 1931–33. This Court in *In re Philip W. Maher, Jr.,* 132 Vt. 560, 563, 326 A.2d 142 (1974), cited various United

States Supreme Court decisions for the proposition that "non-probationary employment in the public sector is a property right entitled to protection under the Fourteenth Amendment". In *Strumsky* v. *San Diego County Employees Retirement Assoc.*, 11 Cal.3d 28, 520 P.2d 29, 112 Cal. Rptr. 805, 809 (1974), the California court similarly ruled that the right of a tenured officer to maintain his position until properly removed was a "fundamental vested right" subject to independent judicial scrutiny because "the abrogation of the right is too important to the individual to relegate it to exclusive administrative examination." Clearly then, a nonprobationary policeman has the right to have the statute under which his removal is governed fairly applied, and any mode of discharge set out by the applicable acts must be strictly adhered to. 62 C.J.S. *Municipal Corporations* § 578(b)(1); 4 McQuillin, Municipal Corporations § 12.253(d) (3d ed. 1968). Thus, the superior court was well within the purview of its jurisdictional authority when it undertook to determine on a factual basis whether the assigned cause of "economic necessity" was in truth a proper ground for the layoffs. Certainly the evidence produced below was sufficient to support the trial court's findings and conclusion as to the absence of such "economic necessity." In light of this, the lower court's order on this question is affirmed.

## II.

The answer to the second question posed by this case is unequivocally set forth in 24 V.S.A. § 1933, which excludes from the protections afforded tenured police officers those patrolmen who have not served in that capacity in the given municipality "continuously for one year". Officer Sexton, as of the relevant date September 15, 1975, had been a Village policeman for a period of some ten months. Obviously, where the meaning of a statute is plain, it must be enforced according to its terms. *City of Rutland* v. *Keiffer*, 124 Vt. 357, 205 A.2d 400 (1964). Therefore, since Sexton had not served out his probationary term as of the date of his removal, the order of the superior court reinstating him must be vacated.

*The order of the Chittenden Superior Court insofar as it concerns Officer Audette is affirmed. The order of the Chittenden Superior Court in regard to Officer Sexton is vacated.*