455 A.2d 805 (1982)
In re G.F.
No. 82-051.
Supreme Court of Vermont.
November 30, 1982.
*806 John J. Easton, Jr., Atty. Gen., Montpelier, and Andrew M. Eschen, Asst. Atty. Gen., Waterbury, for appellant.
Andrew B. Crane, Defender Gen., Nancy E. Kaufman, Acting Appellate Defender, and Catherine McNamara, Juvenile Defender (on brief), Montpelier, and Robert H. Moyer of Conley & Foote, Middlebury, for appellee.
Before BARNEY, C.J., HILL, UNDERWOOD and PECK, JJ., and LARROW, J. (Ret.), Specially Assigned.
UNDERWOOD, Justice.
The Department of Social and Rehabilitation Services (SRS) appeals an order of the juvenile court which placed the juvenile, G.F., under SRS's protective supervision, ordered that he be placed in a specific foster home, and required SRS to pay for his care at that home.
The juvenile, now age 15, was originally adjudicated a child in need of supervision (CHINS) by a disposition order of the Lamoille juvenile court dated December 13, 1974. Legal custody of G.F. was given to SRS "until further order of court but not beyond majority of child." In 1981, after seven years in SRS's custody, he asked to be allowed to live with his natural mother, and they were reunited. The arrangement was not a happy one, and in October of that same year his mother, who was unable to control him, asked SRS to remove him from her home. SRS complied with her request and placed him first with an older sister, and afterwards with another family, which he left without SRS's approval and returned to his mother who was then living in Bristol, Vermont. Sometime later she abandoned her apartment, leaving him behind in it. On December 1, 1981, a Bristol police officer heard glass breaking in that apartment. Investigation revealed a very intoxicated G.F. and a much older companion vandalizing his mother's vacated apartment and throwing the furniture, and anything else that would fit, out of the window overlooking the main street below.
At the request of the Bristol Police Department the state's attorney for Addison County brought a petition to the Addison juvenile court to have G.F. determined to be a delinquent child. On December 14, 1981, the Addison juvenile court determined that G.F. was a delinquent child and ordered that he be detained in temporary custody of SRS pending a disposition hearing. At the January 11, 1982, disposition hearing, SRS recommended to the court that custody of G.F. be transferred from it to the Commissioner of Corrections. Further, it evidenced an intent, as a future *807 delegatee of the Commissioner of Corrections, to remove G.F. from the foster home where he had been placed temporarily, and where it conceded he was getting along well, to the Benson Wilderness Camp for at least five months as a disciplinary measure. The foster parents urged the court to leave G.F. with them, and stated that because of their interest in the boy, they wanted him even if SRS carried out its threats to withhold payment to them for their services. The court said it did not want to discipline the boy but wanted to give him another chance. As the following discussion indicates, the trial court believed G.F. would be better served by staying at the foster home, but wanted to insure that the foster parents would be reimbursed by SRS.
State's Attorney: The [foster parents] have testified that you warned them that if they received placement directly from this Court as opposed to the placement with SRS, that SRS would not be paying them as a foster home?
SRS
Representative: That is correct. The reason for that being his custody would be remanded to the [foster parents] rather than SRS.
The Court: What if the Court places custody in SRS with the provision that he be placed at the [foster home]?
SRS
Representative: Your Honor, I am not sure that that can be legally done. Once the custody of the child is placed with SRS, the SRS I believe, has full say to where he is placed.
The Court: There are ways of getting around that.
SRS
Representative: I am sure there are, your Honor.
Following the disposition hearing the court ordered G.F. to be
placed under the protective supervision of SRS for placement in [the foster home]. It is further ordered that amount of restitution be determined by SRS and juvenile shall pay one-half of the amount, paying through juvenile services officer. It is also ordered that SRS shall reimburse the foster home for juvenile's care.
The above order was originally issued on a standard form entitled "Order of Disposition of a Child in Need of Care or Supervision." SRS moved to modify the order or to alter judgment. Its motion pointed out that the juvenile court had used the wrong form, and argued strenuously that the order was beyond the court's jurisdiction. SRS insisted the order exceeded the court's jurisdiction because (1) SRS retained legal custody of the juvenile pursuant to the 1974 order adjudicating him a neglected child and transferring legal custody to SRS; (2) a legal custodian has "the right to have the physical possession of [the juvenile] and to determine where and with whom he shall live," 33 V.S.A. § 632(a)(10); and (3), therefore the court had no power to override the judgment of the legal custodian.
The court reissued the order on the correct form, entitled "Amended Order of Disposition of a Delinquent Child" but denied SRS's motion, standing on its previous order of disposition placing G.F. in the foster home under SRS's protective supervision, and ordering SRS to reimburse the foster parents.
SRS appeals this order and the denial of its motion, and repeats here the arguments made below, with the added admonition that the juvenile court also lacked jurisdiction to order it to pay for G.F.'s foster care.
SRS contends that it retains custody of G.F. by virtue of the 1974 order of the Lamoille juvenile court which adjudicated him a neglected child and transferred custody of him to SRS. In this regard, it points out that the juvenile court in the instant case did not transfer legal custody of G.F. to the Commissioner of Corrections as requested by SRS, but simply placed him under protective supervision of SRS. SRS argues that this being the case, its contention is mandated by 33 V.S.A. § 658(a), which provides:

*808 Unless otherwise specified therein an order under the authority of this chapter transferring legal custody, or guardianship over the person or residual parental rights and responsibilities of a child to an individual, agency, or institution shall be for an indeterminate period, ....
As G.F. correctly points out, however, the above-quoted statute does not end there in the middle of the sentence but continues, "and provided further that, every order transferring legal custody or guardianship over the person shall be reviewed two years from the date entered and each two years thereafter." The statute thereby creates a contrast between orders transferring legal custody or guardianship, and those transferring residual parental rights and responsibilities. The former shall be reviewed at two-year intervals; no such review is required for the latter.
33 V.S.A. § 658(b) directs that the legal custodian "file a notice of biennial review with the court before whom such proceeding was held, the state's attorney having jurisdiction, and all parties to the proceeding, and, in addition, shall file with such court and such state's attorney a report and recommendation." But the same section of the statute goes on to state specifically that: "Failure to give such notice or to review an order shall not terminate the original order or limit the court's jurisdiction." (emphasis supplied).
Prior to 1982, 33 V.S.A. § 658(c) further provided that any such party could request a hearing within 20 days of notice by the legal custodian. "In the event that no such hearing is requested or ordered, an order shall be deemed reviewed within the meaning of subsection (a), and shall remain in force for a period of two years after the expiration of the time within which a hearing could have been requested, without the entry of an additional order." This section was to apply "to all orders in force and effect on July 1, 1973, and all orders issued thereafter." 33 V.S.A. § 658(d).
The juvenile contends that there is an implication from these statutory provisions that orders of the juvenile court transferring legal custody or guardianship may expire unless the legal custodian, by filing a notice of biennial review, 33 V.S.A. § 658(b), initiates review proceedings. Therefore, he argues that since he has never had a biennial review, the order of December 13, 1974, transferring legal custody of him to SRS has lapsed. The statute is not clear, however, as to whether a failure to file such notice would cause the order to expire two years from the date of the order, or whether it would trigger the additional two-year period available when parties, upon notice, choose not to request a hearing.
We are certain, however, that the legislature did not intend to have the juvenile's legal custody left in limbo each biennium, following the original order of custody, solely because of the neglect of the custodian or guardian to file his notice and report with the court and state's attorney. As we stated in Audette v. Greer, 134 Vt. 300, 360 A.2d 66 (1976), statutes are entitled to reasonable construction and "it is essential that the construction not be such that will render the act ineffective or lead to irrational consequences." Id. at 302, 360 A.2d at 68. We reject G.F.'s construction of the statutes, because it would lead to such consequences. Therefore, we conclude that legal custody of G.F. still remains with SRS.
Having resolved this issue we now turn to SRS's contention that the juvenile court lacked jurisdiction to order G.F. to be placed in a foster home contrary to the desires of the legal custodian, SRS. The resolution of this issue depends upon our construction of 33 V.S.A. ch. 12.
The fundamental rule of statutory construction is to ascertain and give effect to the intention of the legislature. Noble v. Fleming's Estate, 121 Vt. 57, 59, 147 A.2d 889, 890 (1959). If the language is clear the legislative intent must be ascertained from the statute itself, Conn v. Town of Brattleboro, 120 Vt. 315, 320, 140 A.2d 6, 9 (1958), *809 and the court must enforce the statute according to its obvious terms. Blanchard v. Blanchard's Estate, 109 Vt. 454, 459, 199 A. 233, 235 (1938).
33 V.S.A. § 631 provides that the purpose of the Juvenile Procedure Act is to "provide for the care, protection and wholesome moral, mental and physical development of [CHINS and delinquent] children ...." The procedures set out in chapter 12 to effectuate this purpose are concerned with the best interests of the child. See In re N.H., 135 Vt. 230, 373 A.2d 851 (1977); 33 V.S.A. § 667. To assure that such interests are secured, the Act gives the juvenile court exclusive jurisdiction over all proceedings concerning CHINS and delinquent children. 33 V.S.A. § 633. Furthermore, once the juvenile court obtains jurisdiction over a child it retains it, for the purpose of implementing its orders, until the child attains his or her majority. 33 V.S.A. § 634.
The first step in juvenile proceedings is for the juvenile court to determine whether or not the child is delinquent or in need of care and supervision. 33 V.S.A. § 654. If it finds the affirmative, it then sets a date for continuance of the hearing, for the purpose of considering the disposition to be made. Id. Before that hearing takes place a disposition report must be prepared by the Commissioner of SRS, in the event the finding is that the child is a CHINS, or by the Commissioner of Corrections, in the event the finding is one of delinquency. 33 V.S.A. § 655. The report shall include "[a] recommendation as to disposition of the case including the case plan ...." (emphasis added). Id. Having received this report, the juvenile court has the authority to decide whether it is in the child's best interest to transfer legal custody. 33 V.S.A. §§ 656 and 657. If legal custody is transferred, the legal custodian has the power to determine "where and with whom [the child] shall live." 33 V.S.A. § 632(a)(10).
It is apparent to us that the legislature, by the statutory scheme discussed above, intended to balance the powers of the juvenile court and the legal custodian. 33 V.S.A. § 632(a)(10) leaves no doubt that once a child is placed in legal custody his or her custodian has the authority to determine where he or she shall be placed. Implicit in this statute is the admonition that the juvenile court has no authority to dictate where and with whom a juvenile should live, since this would contravene the clear statutory authority granted to the legal custodian. Thus the juvenile court's authority, with regards to placement of a juvenile, is limited.
It is limited to accepting or rejecting a placement recommendation of the legal custodian. The authority to do this is inherent from the Juvenile Procedure Act. The statutes discussed above, which give the juvenile court exclusive jurisdiction over juveniles and the ultimate say as to what is in the child's best interest, 33 V.S.A. §§ 633 and 667, clearly imply the authority to reject a treatment plan proposed by the legal custodian. In this regard, note that SRS or Corrections must submit a recommended case plan to the juvenile court. 33 V.S.A. § 655. This requirement would be meaningless if the juvenile court had no authority to reject such recommendation.
Of course, the court may reject the recommendation only where it finds that it is not in the child's best interest. Its grounds for rejecting the recommendation must not be unreasonable, arbitrary or capricious and its reasons for rejecting should be supported by the court's findings of fact. Moreover, the court should guard against the temptation to substitute its personal judgment for that of an administrative agency authorized by the legislature to make decisions in the first instance. See In re Green Mountain Power Corp., 138 Vt. 213, 215, 414 A.2d 1159, 1160 (1980); Schneider v. Vermont Employment Security Board, 133 Vt. 187, 190, 333 A.2d 104, 106 (1975). Conversely, the legal custodian should buttress the recommendations it submits to the court by adequate supporting evidence so that the juvenile court can readily determine the basis for the recommendation. Only in this manner can the *810 Supreme Court be assured of an adequate record on appeal from which it can conclude whether the juvenile court acted reasonably or abused its discretion in rejecting the recommendation of the legal custodian.
Our holding here, then, is that the juvenile court has the right to either accept or reject a recommendation of the legal custodian. We liken the position of the juvenile court when passing on a recommendation of a legal custodian of a minor appointed pursuant to 33 V.S.A. Chapter 12 to that of the superior court passing upon the recommendation of the state at a highway condemnation hearing on the preliminary question of necessity. The court after hearing the evidence has no authority to lay out an alternate route for the highway proposed by the state. As we stated in State Highway Board v. Loomis, 122 Vt. 125, 132, 165 A.2d 572, 577 (1960):
The judicial process is far better adapted to reviewing the fairness and propriety of proposals than to initiating projects for action by other agencies.... It is one thing to review such ... proposals, weighing them against statutory standards; it is quite another to create such proposals from information adduced during a court proceeding from the testimony of witnesses, however well-informed. The handicaps of a court-generated proposal are obvious.
Where the juvenile court makes findings of fact and rejects outright a recommendation of SRS for a delinquent child in its custody the agency should be permitted by the court to submit a new or amended proposal together with such supporting evidence as it deems adequate to explain its reasons for the recommendation. Instead of rejecting SRS's recommendation, the juvenile court, in the exercise of its judicial discretion, could remand the matter to SRS if it felt additional evidence was necessary for it to make a decision on the recommendation.
In the instant case the juvenile court went beyond rejecting SRS's plan to put G.F. in Benson Wilderness Camp by affirmatively ordering the agency to put him in a specific foster home. In doing so it exceeded its authority. Furthermore, the juvenile court cannot circumvent the specific authority of the legal custodian, SRS, by simply commanding a particular placement as an adjunct of its order placing the child under the protective supervision of SRS pursuant to 33 V.S.A. § 632(a)(15). Therefore, we reverse and remand this case for a new disposition hearing and order consistent with this opinion.
In view of this ruling, it would be premature for us to decide the responsibility for the payment of G.F.'s care at a specific foster home.
The amended order of disposition of the Addison juvenile court dated January 11, 1982, is reversed and the cause remanded for a new disposition hearing and order consistent with this opinion. In the interim G.F. shall be detained in the temporary custody of SRS per order of the Addison juvenile court dated December 14, 1981.