571 A.2d 658 (1989)
In re J.S.
No. 88-449.
Supreme Court of Vermont.
December 22, 1989.
*659 Jeffrey L. Amestoy, Atty. Gen., Montpelier, and Alexandra N. Thayer, Asst. Atty. Gen., Waterbury, for plaintiff-appellant.
Steve Dunham, Public Defender, St. Albans, for defendant-appellee.
Before ALLEN, C.J., PECK, GIBSON and DOOLEY, JJ., and BARNEY, C.J. (Ret.), Specially Assigned.
ALLEN, Chief Justice.
Both the Department of Social and Rehabilitation Services (SRS) and J.S. appeal from the decisions of the juvenile court regarding SRS's attempt to place the juvenile in the Baird Center, a staff-secure residential group home. We affirm the denial of a protective order and reverse the juvenile court's order requiring SRS to move for modification of the juvenile's disposition.
J.S., presently nine years old, began receiving services from SRS in June of 1985. At that time, J.S.'s father and the father's girlfriend with whom J.S. resided requested that SRS assist them in controlling the child. J.S. exhibited many behavioral problems including firesetting, destructive tantrums, and physical violence toward animals and others. J.S.'s father used a variety of in-home services in an effort to resolve his son's problems. When these attempts proved unsuccessful, J.S.'s father voluntarily placed J.S. in the custody of SRS in March of 1987. After an emergency stay at the Baird Center, J.S. was placed in the first of a succession of foster homes, where he continued to engage in problematic behavior. He returned to his family in the summer of 1987, but his stay proved brief. In September of that year, J.S.'s father and his girlfriend concluded J.S. was beyond their control and in need of intense specialized treatment that they could not provide.
A juvenile petition alleging that J.S. was a child in need of care and supervision was filed in October, 1987. The juvenile court held an uncontested merits hearing on November 6, 1987. SRS prepared a disposition report that recommended J.S. remain in the foster care of the Wilson family with whom he had been placed since August of that year.[1] The report also recommended that SRS take custody of the child. No party contested SRS's proposals.[2] On December *660 9, 1987, the juvenile court ordered the legal custody of J.S. transferred to the Commissioner of SRS. The order contained no restrictions or conditions and made no reference to the case plan.
J.S.'s problems continued in foster care. In February 1988, he set a fire at the Wilson home. In March, SRS again placed him in the Baird Center on an emergency basis. After two weeks, he was placed in the Project Attention group home. Placements at two other foster homes followed quickly as his problems persisted.
SRS conducted a twelve-month review on August 8, 1988 and held a plan review meeting on August 9. SRS concluded that J.S.'s continuing pattern of self-abusive and destructive behavior warranted extended placement at Baird on a nonemergency basis.
The Baird Center is a staff-secure residential treatment center located in Burlington. The Center serves up to ten children of ages six to fourteen in its residential unit and can accommodate two children on an emergency basis. Baird combines a day school with individually tailored on-site programs in a setting integrated into the surrounding residential community. The Center also features preventative and intensive follow-up out-patient services. In its plan review, SRS estimated that J.S. would need the structure and resources of Baird for one year and recommended that J.S.'s father continue to attend parenting classes.
J.S. sought to prevent his placement at Baird and filed a motion for a protective order pursuant to 33 V.S.A. § 661 on August 11, 1988. On September 1, 1988, the juvenile court ruled that J.S. had declined to exhaust the available administrative remedies and failed to establish that placement at Baird would harm J.S. or would tend to defeat the original disposition order of the court. J.S. appealed the denial of his motion.
When space became available in November, 1988, SRS placed J.S. at the Baird Center. J.S. filed a motion in juvenile court requesting a temporary stay of the placement at Baird pending the appeal of the court's protective order denial. The juvenile court held hearings on this motion on December 13, 14 and 29, 1988. Rather than issue a temporary stay order pending appeal, the juvenile court elected to treat the motion as a request to enforce the original disposition order. The juvenile court ordered SRS to return J.S. to foster care unless it filed and obtained court approval of a motion to modify the disposition order.
SRS appealed the juvenile court's ruling. By agreement of the parties, this appeal was consolidated with J.S.'s earlier appeal of the denial of the protective order.

I.
J.S. argues that since a majority of those present at the twelve-month case plan review meeting of August 9, 1988 rejected the newly proposed case plan, SRS could not implement a change of placement from foster care to the Baird Center. Specifically, J.S. contends that Vermont adopted a case review system to comply with the requirements of the Federal Adoption Assistance Act of 1980, 42 U.S.C. §§ 670-679, that the twelve-month review constitutes the administrative review outlined in 42 U.S.C. § 675(6)[3] and that those who attend the review represent a decision-making body. As a prerequisite to the implementation of a case plan change, J.S. argues that SRS must obtain the approval of this "administrative review body." He concludes that because three out of the four persons present at the review voted against the proposed change, SRS could not place him at Baird.
*661 SRS responds that 42 U.S.C. § 675(6) does not create a private right of action in the participants, and that even if it does, the statute does not contemplate that those attending the review will function as a voting body to pass on case plan changes.[4] The administrative review is intended, rather, to facilitate communication among interested parties.
J.S.'s father, a representative of the Office of the Public Defender, J.S.'s SRS caseworker, and an impartial consultant attended the twelve-month review. After discussion of the altered case plan, those present signed a form noting that they understood the plan review and knew a signed statement outlining any doubts about the review plan could be attached. Next to their signatures, the participants could check a box to indicate whether or not they agreed with the plan. Only the caseworker agreed with the change in placement. The others all noted their disagreement, but no one attached a signed statement.
We need not decide whether the administrative review conducted by SRS satisfies the requirements of the Adoption Assistance Act. The juvenile court exercises special and very limited statutory powers. In re M.C.P., ___ Vt. ___, ___, 571 A.2d 627, 642 (1989). Generally, unless statutory authority exists for a particular procedure, the juvenile court lacks the authority to employ it. Id. In the context of a protective order hearing, J.S. requested that the juvenile court force SRS to comply with § 675 of the Adoption Assistance Act regarding periodic administrative reviews. The Adoption Assistance Act, however, creates no private right of action in the juvenile.[5] Therefore, the juvenile court had no jurisdiction in the protective order hearing to consider this issue.
J.S. also claims that the juvenile court abused its discretion by denying the motion for a protective order preventing placement of J.S. at the Baird Center. J.S. noted that in 1985 and 1986 a series of incidents of sexual abuse occurred at Baird in which older juveniles preyed on younger children. The staff failed to properly report these incidents to SRS, and the individual responsible for the failure to report still served on the Baird staff. J.S. concludes that placement at Baird puts him at risk because Baird does not protect its residents from sexual abuse. Therefore, J.S. argues that the juvenile court improperly denied his protective order motion.
The court may issue a protective order when it finds conduct that "may be detrimental or harmful to the child, and will tend to defeat the execution of the order of disposition." 33 V.S.A. § 661(2). The question of whether to issue a protective order is committed to the sound discretion of the trial court. The juvenile court's decision will stand on appellate review unless the record indicates that the court exercised its discretion for clearly untenable reasons or to an extent clearly unreasonable. In re R.F., 135 Vt. 275, 276, 376 A.2d 38, 40 (1977) (petition for modification of disposition order).
The record supports the juvenile court's ruling. The court found that SRS thoroughly investigated the Baird Center and implemented a series of remedial controls. The Baird Center became a licensed group home, and the individual who failed to report past abuses is now directly supervised by a clinical psychiatrist. Older children *662 no longer room with younger children, and only one child at a time is placed in the "time-out" room without supervision. The subsequent annual reviews required of licensed group homes have shown no violations of the controls. The court determined that the Baird Center had corrected the situation that gave rise to the sexual abuse incidents. The court concluded that there existed no reason to expect that placement at Baird would increase the danger of physical, mental or sexual abuse of J.S. Therefore, J.S. failed to establish that the proposed placement would be to his harm or detriment. The juvenile court's denial of the motion for a protective order does not constitute an abuse of discretion.

II.
SRS argues that the juvenile court lacked the authority to require SRS to obtain court approval for the modification of a disposition order to effectuate a change in the placement of a child within its custody. We agree.
The resolution of this issue depends on our construction of 33 V.S.A. ch. 12, which allocates power between the legal custodian and the juvenile court. The party or person given legal custody by order of the juvenile court has "the right to have the physical possession of a minor and to determine where and with whom he shall live." 33 V.S.A. § 632(a)(10). By implication, the juvenile court may not dictate the placement of a juvenile, for this would contravene the clear statutory authority granted the legal custodian. In re G.F., 142 Vt. 273, 280-81, 455 A.2d 805, 809 (1982). Therefore, the juvenile court has only limited authority with respect to the placement decisions of SRS.
The Legislature has given the juvenile court the ultimate right to determine what the best interests of the child requires. 33 V.S.A. §§ 659, 667. The juvenile court also has the authority to review and accept or reject the placement recommendation and plan in the original disposition report prepared by SRS. G.F., 142 Vt. at 281, 455 A.2d at 809. However, "a `change' in the child's placement, unlike a change in legal custody, is not sufficient, standing alone, to warrant a modification of the court's disposition order." In re B.L., 149 Vt. 375, 377, 543 A.2d 265, 266 (1988). As legal custodian, SRS had the authority to place J.S. at Baird Center on a nonemergency basis, regardless of the fact that the original disposition report recommended continued placement at the Wilson foster home.
The juvenile court regarded the staff-secure residential treatment program provided by the Baird House as a significant departure from the approved case plan which contemplated foster care. The juvenile court must conduct a review of a juvenile's disposition every eighteen months. 33 V.S.A. § 658. The court reasoned that, in order to retain its ability to effect a meaningful review, it had the implied authority to require SRS to seek modification of the disposition to change placement and thereby enforce compliance with the placement decision of the court-approved case plan.
Nothing in our case law supports the trial court's interpretation of its authority with respect to a change in placement. In G.F., a juvenile who had lived in foster homes for the majority of his seven years in SRS's custody was adjudicated delinquent and temporarily assigned to a foster home. Though SRS conceded that G.F. appeared to benefit from foster care, the agency sought to place the juvenile in the Benson Wilderness Camp as a disciplinary measure. This Court reversed the juvenile court's order of foster care placement and held that the court lacked jurisdiction to order foster home placement contrary to the desires of the legal custodian, SRS. 142 Vt. at 281-82, 455 A.2d at 809-10. Although no intervening adjudication of delinquency requiring a disposition report exists in the present case, the rationale of the G.F. decision applies with equal validity here and dictates the same result. See B.L., 149 Vt. at 377, 543 A.2d at 266 (change of placement from foster home to wilderness group camp insufficient standing alone to warrant modification of disposition order).
*663 The disposition of a juvenile must be "suited to the protection and physical, mental and moral welfare of the child." 33 V.S.A. § 656(a). A case plan must have flexibility to accomplish the statute's goal. Thus, the juvenile court must exercise restraint with respect to placement decisions. While a court may favor the placement outlined in the approved case plan, it "should guard against the temptation to substitute its personal judgment for that of an administrative agency authorized by the legislature to make decisions in the first instance." G.F., 142 Vt. at 281, 455 A.2d at 809. In any particular situation, the best interest of the child:
can not be insured by case plans made in such detail that SRS is locked in to a particular course of action. SRS, as legal custodian, must have the freedom to determine the appropriate placement of the juvenile, and to make adaptations in the case plan as changing circumstances require.
In re L.T., 149 Vt. 473, 476, 545 A.2d 522, 524 (1988).
The juvenile court reasoned that, without the power to enforce approved case plans by requiring modification, "SRS could propose case plan # 1, have it rejected, obtain approval of case plan # 2 and then return to case plan # 1 the day after disposition." Analysis of the statutory scheme reflected in 33 V.S.A. chapter 12 belies this conclusion and reveals that the Legislature has already supplied the juvenile court with the tools necessary to prevent the occurrence of the worst case scenario envisioned by the court. Section 659(a) provides "[a]n order of the court may be set aside by a subsequent order of [the juvenile] court ... when it appears that the initial order was obtained by fraud or mistake ... or that newly discovered evidence so requires." Therefore, the juvenile court has the authority to rescind a disposition order if, after its issuance, SRS changes placement in accordance with a previously rejected case plan. The scenario contemplated by the juvenile court cannot justify its action in the case at bar. This Court is reluctant to recognize a power not explicitly authorized by statute and will do so only when necessary to effectuate the intent of the Legislature. McAllister v. AVEMCO Ins. Co., 148 Vt. 110, 112, 528 A.2d 758, 759 (1987). We decline to do so here because the Legislature has perceived and adequately addressed the potential problem cited by the juvenile court.
Lastly, J.S. argues that a change of placement without a prior due process hearing violates the Fourteenth Amendment of the United States Constitution and Articles 1 and 10 of the Vermont Constitution. We disagree.
The due process clause protects the basic liberty interest of parent and child to relate to one another free from governmental interference. Rutherford v. Best, 139 Vt. 56, 60, 421 A.2d 1303, 1306 (1980). In recognition of these rights, the Legislature has mandated that the juvenile court conduct a review of every order transferring legal custody eighteen months from the date entered and each eighteen months thereafter. 33 V.S.A. § 658. This formal review procedure requires the court to determine whether:
(1) the child or custody thereof shall be returned to his parents or other family members;
(2) the child shall be continued in the custody of the commissioner for a specified period;
(3) the child, because of exceptional circumstances, shall remain in the custody of the commissioner on a long term basis as a permanent plan or with a goal of independent living;
(4) the child should be considered for adoption or legal guardianship.
33 V.S.A. § 658(d).
This review procedure takes place automatically and does not depend upon the initiation of parent or child. Cf. In re G.K., 147 Vt. 174, 179, 514 A.2d 1031, 1304 (1986) ("patient-initiated review process ... fails to satisfy the due process rights of persons subject to indeterminate involuntary treatment orders"). SRS can change the placement of a child in its custody without resort to the juvenile court. The eighteen-month review adequately protects *664 the liberty interest of parent and child implicated by a change of placement and satisfies the procedural due process requirements of the Vermont and United States Constitutions. SRS procedures supply additional protection by providing for six- and twelve-month case plan reviews, with agency appellate review available for those who disagree with a proposed change in plan.
The denial of the motion for a protective order is affirmed. The order directing SRS to place J.S. in foster care pending the filing and approval of a motion for modification of the disposition order is reversed and remanded.
NOTES
[1] The disposition report also recommended: special education services, participation in the Wraparound Program, a family evaluation, and visitation with his father and sister.
[2] The juvenile's brief repeatedly refers to an agreement with SRS whereby parent and child agreed not to contest the custody order because the proposed disposition required foster care. Without deciding the possible effect, if any, of such an agreement on a change of placement, we note that the record discloses a total absence of any evidence of the agreement or its content. A party has the burden on appeal to produce a record that supports its position. Condosta v. Condosta, 142 Vt. 117, 121, 453 A.2d 1128, 1130 (1982). The juvenile has failed to meet this burden. Therefore, we decline to consider the alleged agreement on appeal.
[3] Section 675(6) defines administrative review as a review "open to the participation of the parents of the child, conducted by a panel of appropriate persons at least one of whom is not responsible for the case management of, or the delivery of services to, either the child or the parents who are the subject of the review."
[4] SRS regulations provide for an administrative review with a "team approach," requiring the caseworker and an impartial consultant to be present at the review meeting. The casework supervisor, the child, the child's attorney, the child's parent(s), and the child's foster parent(s) must be invited to participate. Where a participant disagrees with the plan, the "dissenting opinion" should be discussed in order to achieve consensus. Where an irreconcilable disagreement exists, the client may request a Social Service Review.
[5] A private right of action may exist under 42 U.S.C. § 1983 over which federal and state courts have concurrent jurisdiction. See, e.g., Lynch v. Dukakis, 719 F.2d 504, 509-12 (1st Cir.1983) (federal court could establish caseload guidelines and a 24-case assignment rule, in addition to a general compliance order, to remedy deficiencies in Massachusetts' compliance with 42 U.S.C. §§ 670-679).