NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 79

No. 2019-139

| | |
|---|---|
| In re A.M., Juvenile | Supreme Court |
| | On Appeal from<br>Superior Court, Windham Unit,<br>Family Division |
| | October Term, 2019 |

Katherine A. Hayes, J.

Adele V. Pastor, Barnard, for Appellant Mother.

Kerry A. McDonald-Cady, Windham County Deputy State's Attorney, Brattleboro, for Appellee.

PRESENT: Reiber, C.J., Robinson and Eaton, JJ., and Tomasi, Supr. J., and Burgess, J. (Ret.), Specially Assigned

¶ 1.     **ROBINSON, J.**     Mother appeals the family division's disposition order transferring custody of her six-year-old daughter A.M. to father, who lives in Colorado. Specifically, mother argues the court erred in directing mother to pay for 75% of the costs of transporting the child back and forth to Vermont for contact with mother. We agree and reverse.

¶ 2.     The following facts are derived from the court's disposition order. A.M. was born in November 2012. Mother and father were then married and living in Colorado. In October 2013, the parties separated and mother returned with A.M. to Vermont to live with mother's parents. Father filed for divorce in Colorado. Pursuant to the Colorado divorce order, A.M. spent much of the summer in Colorado with father and lived with mother in Vermont the rest of the year.

¶ 3.    In February 2018, the Department for Children and Families (DCF) filed a petition alleging that A.M. was a child in need of care or supervision (CHINS) due to mother's heroin use and statements that she might kill herself and A.M.  In May 2018, mother stipulated to the merits of the CHINS petition.  In July 2018 DCF filed a disposition case plan recommending that custody of A.M. be discharged to father with mother having reasonable and appropriate parent-child contact.  Later that month, the court held an on-the-record conference with the court in Yuma County, Colorado, where father resides.  The Colorado court ceded jurisdiction over custody issues relating to A.M. to Vermont.

¶ 4.    DCF received a positive report about father's home from Colorado's Department of Human Services in June 2018.  DCF subsequently placed A.M. with father in Colorado, where she continues to reside.  She has visited mother and maternal grandparents for vacations.

¶ 5.    A contested disposition hearing was held over three days in October and December 2018 and January 2019.  In a written order issued in March 2019, the court found that although mother had made progress toward sobriety, it was in A.M.'s best interests to transfer custody to father.  It ordered that mother was entitled to the same parent-child contact that the parents' divorce decree gave to father.  However, for equitable reasons, it found that mother should bear the majority of the costs related to transporting A.M. to Vermont for visits.  Specifically, the court found that father was paying for most of A.M.'s food, clothing, health care, and recreational and educational needs; mother had chosen to relocate to Vermont; and mother's inability to care for A.M. had led to the change in custody.  The court therefore directed mother to pay at least 75% of the transportation costs required to transport A.M. to and from Vermont for parent-child contact with mother.

¶ 6.    The court acknowledged that there was no pending petition for modification of parental rights and responsibilities in Vermont or Colorado, and that it was effectively modifying the Colorado divorce decree.  However, it concluded that its order was consistent with the

2

Colorado court's relinquishment of jurisdiction over modification issues under the Uniform Child Custody Jurisdiction and Enforcement Act, 15 V.S.A. §§ 1061-1096. The court therefore issued a disposition order and a parental rights and responsibilities order. It stated that Colorado should have primary jurisdiction over future issues related to A.M.'s custody because Colorado had become her home state.

¶ 7.    On appeal, mother's sole challenge is to the portion of the court's orders directing her to pay 75% of the costs for A.M.'s visits to Vermont. She concedes that the Vermont court had jurisdiction to transfer custody to father and establish parent-child contact for mother under 33 V.S.A. § 5318. However, she argues that the court lacked authority in this CHINS proceeding to make an order allocating travel costs, particularly since neither party requested such an order, there was no warning to the parties, and no evidence was taken regarding their relative financial conditions. The State does not disagree and joins in mother's arguments on this issue.

¶ 8.    Whether the court had authority to issue an order allocating the costs of travel for parent-child contact to the noncustodial parent at disposition in this CHINS proceeding is a question of law that we review without deference to the trial court. See State v. VanBuren, 2018 VT 95, ¶ 19, __ Vt. __, 214 A.3d 791 (explaining that we review pure questions of law without deference to trial court).

¶ 9.    We agree with the parties that the family division lacked authority to make such an order here. A CHINS case is a legislatively created proceeding in which the family division of the superior court is vested with special and limited statutory powers. 33 V.S.A. § 5103(a); see In re Lee, 126 Vt. 156, 157, 224 A.2d 917, 918 (1966) (explaining that court overseeing juvenile proceeding "may be classed with the probate courts, the public service commission, and other bodies exercising special and limited statutory powers not according to the course of the common law" (quotation omitted)). "Generally, unless statutory authority exists for a particular procedure, the juvenile court lacks the authority to employ it." In re J.S., 153 Vt. 365, 370, 571 A.2d 658,

3

661 (1989). A review of the statutes governing CHINS proceedings reveals no authority for the family division to make an order of this nature as part of disposition in a CHINS case.

¶ 10. When a child has been adjudicated CHINS, the court must hold a disposition hearing and issue a disposition order. 33 V.S.A. §§ 5315(g), 5318. Section 5318(a) provides that at disposition the court "shall make such orders related to legal custody for a child who has been found to be in need of care and supervision as the court determines are in the best interest of the child," which may include "[a]n order transferring legal custody to a noncustodial parent and closing the juvenile proceeding." Such an order "may provide for parent-child contact with the other parent." Id. § 5318(a)(3). Section 5318 does not authorize the court to allocate the costs of such contact.[1]

¶ 11. Section 5319 governs parent-child contact in CHINS proceedings. Subsection (b) states that the court "may determine the reasonable frequency and duration of parent-child contact and may set such conditions for parent-child contact as are in the child's best interests including whether parent-child contact should be unsupervised or supervised. The Court may allocate the costs of supervised visitation." Neither subsection (b) nor any other part of § 5319 authorizes the court to allocate transportation costs for unsupervised visitation.[2]

¶ 12. There is authority for the court to make a child-support order in a CHINS proceeding, but only when the child is in DCF custody. Section 5116 of Title 33, which deals with costs and expenses for the care of children in CHINS proceedings, provides that the family court "may, in any order of disposition under the juvenile judicial proceedings chapters, make and

_____

[1] In contrast to other orders in a CHINS proceeding, the order transferring custody is not confidential and is placed in the applicable domestic docket, if any. 33 V.S.A. § 5318(a)(3). This lends additional structural support to the conclusion that the CHINS statutes generally contemplate that matters beyond custody and contact are left to the domestic docket.

[2] We need not decide in this appeal whether § 5319(b) authorizes courts to allocate travel costs associated with supervised visitation in addition to the costs of the supervision itself.

4

enforce by levy and execution an order of child support to be paid by the parent of the child." Id. § 5116(c). However, subsection (e) modifies this seemingly broad provision by stating that "[a] child support order shall only remain in effect as long as the child who is the subject of the support order is in the legal custody of the Commissioner and placed with someone other than the parent or parents responsible for support." Id. § 5116(e). Thus, even assuming that the allocation of travel costs is tantamount to a child-support order, § 5116 does not empower the court to make a child-support order in a CHINS proceeding when the child is not in DCF custody.

¶ 13.    In sum, the CHINS statute does not explicitly authorize the court to allocate the costs of unsupervised parent-child contact between a custodial parent and a noncustodial parent or to allocate travel costs when the court transfers custody to a noncustodial parent at disposition. The fact that the family division has unlimited authority to award or modify child support in divorce, parentage, and other types of proceedings does not mean that it may do so in a CHINS proceeding. See In re M.C.P., 153 Vt. 275, 302, 571 A.2d 627, 642 (1989) ("Generally, unless there is statutory authority for a particular procedure, the [juvenile] court does not have the power to employ it.").

¶ 14.    Moreover, the authority is not inherent in the overall statutory scheme for CHINS proceedings. Although the family division has jurisdiction over both CHINS and child-support proceedings, 4 V.S.A. § 33(a)(7)-(8), the matters are distinct and involve different procedures. Issues regarding child support between a custodial and noncustodial parent are not suited to the procedures controlling CHINS proceedings. The problems associated with making such an order in a CHINS proceeding are evident here. No party had requested an order allocating the costs of transportation for visits with mother or modifying child support. Thus, the parties did not have notice that the court planned to address this issue and did not have a meaningful opportunity to gather and present the kind of evidence that would be relevant to such an order. Although some general evidence of the parents' financial situations was introduced at the disposition hearing, there

5

was no opportunity for discovery or disclosure of the parents' respective assets and income as there would be in a child-support proceeding. Compare V.R.F.P. 4.0(g), 4.1(b) (governing financial discovery in actions for divorce, legal separation, dissolution of civil union, annulment, parentage, desertion, and nonsupport when child support is at issue, and requiring parties to file financial affidavits), with V.R.F.P. 2 (governing CHINS proceedings and containing no financial disclosure requirement); see also 15 V.S.A. § 656 (providing that child-support obligation must be divided based on parents' respective available incomes).

¶ 15. Because we find no statutory authority for the court to make a financial award of this type in a CHINS proceeding, we reverse the court's final disposition order insofar as it purports to allocate 75% of the costs of transporting A.M. for visits to mother. We remand for the court to issue new disposition and parental rights and responsibilities orders without that provision.[3]

The orders on appeal are reversed and the matter is remanded for the court to issue new disposition and parental rights and responsibilities orders consistent with this decision.

FOR THE COURT:

_____

Associate Justice

---

[3] No party has challenged the remaining terms of the disposition and parental rights and responsibilities orders. Those terms should be included, unchanged, in the new order. Any effort to secure an order concerning transportation costs must be made by filing a separate action. We take no position on whether such an action must be filed in Vermont or Colorado.