VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    22-AP-347



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JUNE TERM,   2023

| | |
|---|---|
| In re R.B., Juvenile<br>(F.B., Mother\*) | } APPEALED FROM:<br>}<br>} Superior Court, Windham Unit,<br>} Family Division<br>} CASE NO. 92-7-19 Wmjv<br>  Trial Judge: Michael R. Kainen |

In the above-entitled cause, the Clerk will enter:

Mother appeals from the issuance of a juvenile protective order in these ongoing juvenile proceedings.  While the order on appeal appears to be interlocutory, we grant mother's request to suspend the rules under Vermont Rule of Appellate Procedure 2 and consider the case on the merits.  We affirm the decision below.

We begin with the case history to place the protective order in context.  R.B. was taken into the emergency custody of the Department for Children and Families (DCF) in July 2019 due to mother's substance use.  He was placed with his maternal grandparents, where he remains. Mother agreed that R.B. was a child in need of care or supervision (CHINS) based on her substance use and homelessness.  The case plan sought reunification with mother.  The State's first termination petition was filed in January 2021.

While the termination petition was pending, R.B. moved to reduce contact with mother. R.B. argued that the change was necessary to provide stability and predictability for him and to minimize the disruption in R.B.'s foster home caused by mother's aggressive demeanor toward grandmother and mother's use of vulgar language in R.B.'s presence.  The court ruled on the motion in November 2021.  It found that mother did not respect the scheduled times for parent-child contact or the boundaries requested by grandmother.  Mother arrived unannounced at grandmother's home and regularly stayed past the time established as R.B.'s bedtime.  R.B. was then tired, unhappy, and reluctant to go to school the following morning.  When grandmother tried to talk to mother about these issues, mother responded that grandmother was not her boss and that she could not tell her what to do with R.B.

The court further found that mother's time with R.B. was marked by aggressive and loud confrontations with grandmother, including the use of vulgar language in R.B.'s presence.

Mother had a strong personality, and she was unwilling to respect grandmother's authority as R.B.'s foster mother. The court found mother's inability to engage with grandmother in a cooperative and collaborative manner for R.B.'s benefit to be further evidenced by her demeanor and strident tone at the motion hearing. Ultimately, the court found that mother's behavior constituted a real, substantial, and unanticipated change of circumstances that warranted modification of the parent-child contact schedule. It directed some visitation to occur at a supervised location and it set forth specific beginning and ending times for visits at grandmother's home.

In January 2022, the court denied the State's first petition to terminate mother's rights. Six months later, an updated permanency case plan was adopted with a goal of reunification by October 2022. Mother's time with R.B. gradually increased and included unsupervised and overnight visits.

In October 2022, grandmother made a doctor's appointment for R.B. given her concern about R.B.'s facial drooping and facial numbness. Although mother lacked authority to do so, she attempted to cancel the doctor's appointment. The appointment ultimately went forward and R.B. was diagnosed with acute leukemia and immediately hospitalized for more than a month.

In early November 2022, the State moved for a protective order under 33 V.S.A. § 5115 to restrain mother from interfering with R.B.'s medical care and to impose supervised visitation. The State alleged that mother's demonstrably incorrect beliefs and her defiant behavior were having a harmful effect on R.B. The DCF caseworker and mother testified at the motion hearing. The State also introduced various exhibits, including notes from medical providers about mother's behavior at the hospital, which mother objected to on hearsay grounds. The State argued that, as in a disposition or parent-child-contact proceeding, the court had discretion to admit hearsay that it deemed reliable. See In re S.G., 153 Vt. 466, 474 (1990) (stating that "[i]n general, all information that may be helpful in determining the disposition of a CHINS child may be admitted and relied upon during a disposition hearing," including hearsay evidence). Mother responded that hearsay should not be allowed because of the potential impact the court's decision could have on her visitation schedule. The court agreed with the State that the protective-order proceeding was effectively dispositional and found it appropriate to admit reliable hearsay. The court thus overruled mother's objections and, after additional foundation testimony was offered, it admitted the documents in question.

The court granted the State's request for a protective order orally and in a written decision. The court found that R.B. had a medical emergency in mid-October and the DCF caseworker expressed to grandmother that she should take R.B. to the doctor that day and that she was authorized to do so. Mother basically said "no," that she would be taking R.B. to the dentist based on her own experience with an infected tooth and her consultation with her boyfriend and his mother. Mother told the caseworker that she would be the one making R.B.'s medical appointments going forward.

The caseworker insisted that grandmother take R.B. to the doctor and indicated that mother could attend the appointment if she could behave in a constructive way. Mother was unwilling to accept that and attempted to cancel the appointment. Mother told the caseworker that she knew R.B. better than the doctor and she knew that he should see a dentist, not a doctor. Mother reiterated that she would be the person making medical appointments. The doctor's

office then expressed concern about who had custody of R.B. and whether they had authority to treat him. They had to track down the DCF caseworker who explained that DCF had legal custody of R.B. and that he needed to be seen. Mother was given full access to R.B. while he was hospitalized. While at the hospital, mother indicated that there were some nurses who did not like her and made reports about her. The court found it credible, however, that mother was resistant and still did not follow medical advice even at the hospital.

The court found that the State established the need for a protective order, particularly given R.B.'s fragile medical state and his ongoing leukemia treatment. The court explained that R.B. did not need conflict over his medical treatment nor did he need conflict between his caregivers. The court noted that mother would still have access to information about R.B.'s medical treatment but she would be prohibited from scheduling or canceling any medical appointments. It required supervised visitation given mother's history of poor judgment but recognized that this requirement should not be imposed long-term. The court indicated its expectation that the visitation plan would change in the future.

In its written order, the court reiterated that mother had obstructed R.B.'s medical care and that, had she succeeded in preventing him from being seen by the doctor, R.B. would have been in grave danger of death or compromised medical condition. The court further found that mother's behavior while R.B. was in the hospital raised a significant concern that her decision to cancel the doctor's appointment was not an isolated instance of poor judgment. It found that her resistance to accepting guidance from professionals significantly compromised her ability to make decisions for R.B. and her obstruction of grandmother could have led to R.B.'s death. Her behavior at the hospital compounded the problem. Mother argued with R.B.'s guardian in front of R.B. and failed to follow directions provided by nurses regarding R.B.'s care. The court found a substantial change in circumstances that required modification of the June 2022 permanency plan. R.B. needed a stress-free environment and conflict between mother and grandmother would be counterproductive. In its order, the court also expressed concerns about mother's possible substance abuse, including possibly nodding off in the hospital and her daytime arrest in Lebanon, New Hampshire (while R.B. was hospitalized at Dartmouth-Hitchcock Medical Center) for driving while intoxicated and other criminal charges. The court made no findings as to whether mother was using substances but noted that she had failed to submit a requested urinalysis in the timeframe requested by DCF.

The juvenile protective order expires on November 17, 2023. It directs mother not to obstruct R.B.'s medical care, make or cancel any medical appointments for him, and to stay 100 feet away from his residence and him except during supervised visits. The court indicated that the requirement of supervised visits might be revised as part of a new permanency plan, and it directed DCF to submit a new permanency plan within thirty days. Mother then filed a notice of appeal from the juvenile protective order.

Mother argues on appeal that the court should have taken lesser steps to protect R.B. before issuing a protective order under 33 V.S.A. § 5115, which carries the potential of criminal charges for its violation. She also asserts that the court erred in admitting reliable hearsay at the hearing.[*]

---

[*] Mother further asserts that her equal protection rights were violated because the protection order addressed visitation and visitation should be addressed through other means.

We find mother's arguments unpersuasive. Section 5115(a) of Title 33 states that "[o]n motion of a party or on the court's own motion, the court may make an order restraining or otherwise controlling the conduct of a person if the court finds that such conduct is or may be detrimental or harmful to a child." "The question of whether to issue a protective order is committed to the sound discretion of the trial court." In re J.S., 153 Vt. 365, 370 (1989). We will uphold the trial court's decision "unless the record indicates that the court exercised its discretion for clearly untenable reasons or to an extent clearly unreasonable." Id. at 371.

The court was plainly authorized to issue a protective order that, among other things, regulated mother's contact with R.B. The court had no obligation to explore other steps before granting DCF's request for a protective order under 33 V.S.A. § 5115. Section 5115 explicitly states what is required for issuance of a juvenile protective order: an order is appropriate "if the court finds that such conduct is or may be detrimental or harmful to a child." The court made the necessary finding here.

The court's decision is supported by the record. In reaching our conclusion, we need not decide if the court erred in admitting reliable hearsay over mother's objection. The court's decision is sufficiently supported without this evidence. In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508 ("In juvenile proceedings, unsupported findings do not lead to reversal if the remainder of the court's findings, which are supported by the record, are sufficient to sustain the decision." (quotation and brackets omitted)).

The DCF caseworker testified without objection about mother's attempts to interfere with the scheduled medical appointment. As to the caseworker's affidavit, which was admitted into evidence, mother objected only to third-party hearsay in this document. Mother did not object to the admission of statements, recounted in the affidavit, that she allegedly made directly to the caseworker. We agree with the State that mother's own statements made to the caseworker are admissible as nonhearsay. See V.R.E. 801(d)(2) (providing that "statement is not hearsay if . . . [it] is offered against a party and is . . . [the party's] own statement"). Mother also testified at the hearing that, based on her own experience, she believed R.B.'s symptoms required a dentist visit rather than a doctor visit. She stated that she knew R.B. better than the doctor did and indicated that she had conveyed this belief to the DCF caseworker. The court's finding that mother obstructed R.B.'s medical care and thereby created a grave risk of harm to him is supported by the evidence.

There was also evidence in the record to show mother's history of combative and defiant behavior, including her refusal to respect grandmother's authority or abide by parameters created to serve R.B.'s best interests. As set forth above, the court modified mother's contact in November 2021 because of the detrimental effect that her behavior had on R.B. Mother acknowledged fighting with grandmother in R.B.'s hospital room in front of R.B. about R.B.

---

She suggests that the court should have sua sponte concluded that § 5115 is unconstitutionally vague and overbroad. To provide clarity, mother contends that, to obtain a juvenile-protective order under 33 V.S.A. § 5115, the State must satisfy the requirements of the relief-from-abuse law, 15 V.S.A. §§ 1101, 1103. Mother fails to show that she preserved these arguments by raising them below and she fails to demonstrate plain error. See, e.g., State v. Gilbert, 2009 VT 7, ¶ 7, 185 Vt. 602 (mem.) (finding no plain error where Court had not yet decided issue raised by party for first time on appeal, and thus, party could not "show that any error of law the trial court may have made was obvious").

4

taking his medicine. Mother believed that they "weren't arguing enough to make [R.B.] cry" and that R.B. was crying about taking medicine. The DCF caseworker testified that mother's behavior was consistent with the way she had acted in the past and that it was of even greater concern now given R.B.'s fragile health. It was reasonable to conclude that R.B.'s fragile state required supervised visitation, at least initially. As the court found, R.B. did not need conflict over his medical treatment nor did he need conflict between his caregivers. Mother was also charged with DUI and other related crimes during the time that R.B. was at the hospital. Her arrest prompted DCF to seek a urinalysis from mother, which was not provided in the timeframe requested. The record supports the court's finding that mother's behavior was detrimental or harmful to R.B. and required the imposition of a juvenile-protection order. The court did not abuse its discretion in granting the State's request.

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice