595 A.2d 293 (1991)
In re C.M., Juvenile.
No. 90-048.
Supreme Court of Vermont.
June 21, 1991.
Howard E. VanBenthuysen, Franklin County State's Atty., and Jo-Ann Gross, Deputy State's Atty., St. Albans, for plaintiff-appellee.
Daniel Albert, Public Defender, St. Albans, for defendant-appellee.
Michael Rose, St. Albans, for defendant-appellant father.
Paul R. Clemente and Christopher Jeffrey, Montpelier, for defendant-appellant mother.
Before ALLEN, C.J., and GIBSON, DOOLEY and JOHNSON, JJ.
GIBSON, Justice.
C.M.'s mother and father each appeal from a juvenile court order that their child was in need of care and supervision (CHINS), within the meaning of 33 V.S.A. § 632(a)(12). We affirm.
On May 11, 1989, the State filed a petition on behalf of the Department of Social and Rehabilitation Services (SRS), alleging that appellants' daughter, C.M., was a victim of sexual and physical abuse by her father and a victim of neglect by her mother. At a merits hearing conducted on July 6, 1989, C.M., her mother, and an SRS *294 worker testified. At the close of the testimony the court made a finding of CHINS based on evidence that C.M.'s father had sexually abused her. The court ordered custody of C.M. to be continued in SRS and requested preparation of a disposition report. After the filing of the disposition report, the court ordered a further hearing, and following that hearing, on January 22, 1990, the court issued additional findings and an order transferring custody and guardianship of C.M. to the commissioner of SRS. The present appeals followed.
C.M.'s mother argues that the trial court's findings with respect to her are clearly erroneous, because they are unsupported by the evidence. The court's critical findings as to the mother were:
1. The mother[,] aware of the danger of the child being injured by the father[,] continued to permit him to care for the child by himself from time to time.
2. The mother has not and can not protect the child in a family setting with her husband despite her awareness of his dangerous physical actions towards the child.
3. The mother claims disbelief of the child's testimony regarding the sexual abuse of the child by the father and does not intend to take any action to protect the child from the father.
. . . .
5. The child suffers from a chronic hyperactivity problem. Her mother, over the last year, has failed and refused to assist her to monitor a conservative drug regimen prescribed for the malady.
. . . .
7. Failure to properly administer the drug doses has adversely affected the child's health and schooling.
As to findings 1 and 2, the social worker assigned to the family testified at the October 20, 1989 hearing that as "a continuing theme in the work with the family," she had warned the mother that C.M. and the father should not be left alone. Thereafter, the mother told the social worker that she left C.M. alone with her father after school and that "between school and [the mother's] coming home, there were often times [C.M.] and [her father] were together." The same witness testified that the mother had admitted that C.M. was also left alone with her father "all during school vacations." In addition, the mother herself testified that on at least one occasion C.M. was left alone with her father and that on another occasion C.M. and another child were alone with him.
As to findings 5 and 7, the nurse at C.M.'s school testified that on a day when C.M. appeared to be disoriented and a question was raised about the child's medication levels, the mother told her that C.M. had been responsible for her own medication since she was four years old. That testimony, viewed in a light most favorable to the State, supports finding 5, but does not support finding 7, because there was no evidence that C.M.'s general health problems were linked to her medication regimen or that whatever problems C.M. might be having at school were attributable to the mother's failure to supervise C.M.'s medication. Nor does the evidence support that part of finding 3 concerning the mother's disbelief of the child's testimony regarding the father's sexual abuse.
The mother argues that these findings clearly were based on the disposition report, not in-court testimony, and that the disposition report contained inadmissible hearsay. She is correct that hearsay allegations in the disposition report cannot serve as the basis for determining parental unfitness. In re Y.B., 143 Vt. 344, 347-48, 466 A.2d 1167, 1169 (1983). Consequently, the question is whether the findings that were supported by the evidence were sufficient to support the court's decision. We hold that they were.
The most serious allegations supporting the CHINS petition were those concerning the multiple abuses of C.M. by her father and the failure of the mother to protect her daughter. The facts of the father's abuse and the mother's refusal or inability to keep her daughter from her husband's sole company are clear on the record and are sufficient, standing alone, to support the CHINS finding as a matter of *295 law. See Care & Protection of Three Minors, 392 Mass. 704, 711, 467 N.E.2d 851, 857 (1984) (ruling that children were in need of care and protection would stand, despite certain erroneous findings, where other evidence supported ultimate finding of unfitness and error did not appear to have unfairly influenced the judge's conclusions); In re Slis, 144 Mich.App. 678, 688-89, 375 N.W.2d 788, 793-94 (1985) (erroneous finding of mother's mental deficiency did not require reversal because overwhelming evidence of neglect supported termination of parental rights).
The father argues that the court erred in allowing C.M. to testify while seated at counsel's table, between her attorney and her social worker. His theory is that the "extremely informal manner in which C.M.'s testimony was taken substantially impaired the truth-seeking function of the merits hearing and therefore constituted an abuse of discretion by the juvenile judge." This was not a criminal proceeding, but even in criminal cases some accommodation may be made to protect juvenile witnesses from the stress and fright that may surround their testimony in court. In State v. Dunbar, 152 Vt. 399, 404, 566 A.2d 970, 973 (1989), we held that allowing a child witness to sit between two "support persons," even though the defendant and the witness had a "somewhat obstructed view of one another," did not violate the defendant's Sixth Amendment right to confront his accuser.
In the present case there was no jury, and the potential for prejudice from accommodating the witness was greatly reduced. In any event, the father's counsel did not object when the court allowed the child to remain at the counsel table, but only expressed concern that C.M.'s attorney or social worker might improperly coach her during her testimony. When C.M.'s testimony began, the father's counsel complained that C.M. was looking at her attorney's notes, but the child's attorney denied that his client was doing so, and the court concluded that the contacts between child and attorney were not improper. A review of the record reveals no prejudice to the father in the seating arrangements during C.M.'s testimony. The court did not abuse its discretion in permitting this arrangement.
The father's argument that the examination of C.M. consisted of improperly leading questions is without merit. Under V.R.E. 611(c) leading questions are permitted on direct examination of a witness where "necessary to develop his testimony." In this case, the court sustained the objections of the father's attorney to certain leading questions, and the direct examination ended at that time. Reading the record as a whole, the questions to C.M. were appropriate for a child testifying about sensitive or embarrassing matters. See Commonwealth v. Baran, 21 Mass. App. 989, 991, 490 N.E.2d 479, 481 (within judge's discretion to permit leading question of child witness "whose attention can be called to the matter required, only by [such] question"), review denied, 397 Mass. 1103, 494 N.E.2d 388 (1986); People v. Tyrrell, 101 A.D.2d 946, 946, 475 N.Y.S.2d 937, 938-39 (1984) (latitude properly given to pose leading questions to develop testimony of child victim of sex crime who is unwilling to testify freely).
Affirmed.