## In re C.A., J.A. and A.M.

[630 A.2d 1292]

No. 90-476

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ.**

Opinion Filed July 30, 1993

*Charles Martin* of *Martin & Paolini*, Barre, for Defendant-Appellant.

**Allen, C.J.** The mother of male minor C.A. and female minors J.A. and A.M. appeals from an order of the family court transferring custody and guardianship of one child to the child's father and of two others to their grandmother. We reverse and remand.

The present proceedings were initiated after the mother married E.L. in 1989. E.L. was a convicted sex offender whose conditions of probation required that he "not initiate conduct with any minor female." The mother was receiving public assistance at the time of the marriage and did not advise the Department of Social Welfare (DSW) that she had married. DSW

terminated her benefits, and, according to the mother, she was then "required to live in her vehicle and various motels." Thereafter, the Department of Social and Rehabilitation Services (SRS) filed the present petition, based solely on the potential danger to the children from E.L. The family court found that the children were in need of care and supervision, concluding that:

1. [E.L.] is a threat to this family.

2. [The mother] still believes her husband is innocent of L & L.

3. [E.L.] believes he doesn't have a problem and believes he needs no further treatment.

4. [The mother] in this environment at this time is not in a position to protect her three very young children.

5. [E.L.] at this time is extremely likely to reoffend, thus creating a danger to the female children.

At the disposition hearing, the court transferred custody of A.M. to the child's father and of C.A. and J.A. to their maternal grandmother. The present appeal followed.

The mother contends that the trial court's disposition order was not supported by the findings and evidence, and that the court improperly transferred custody of A.M. to her natural father and C.A. and J.A. to their grandparents, because there was no finding of parental unfitness. Both points have merit.

■ The findings in the disposition order reveal numerous shortcomings of the mother, including leaving her first infant unsupervised, failing to bond with and refusing to feed her second child, failing to maintain an appropriate home, and failing to acknowledge the dangers her new husband might pose to her children. The court's conclusions, however, rely exclusively on the danger posed by the husband and omit any discussion of the mother's problems. Moreover, the court does not state that the mother is unfit, and absent such a finding, it may not remove a child from the parent's custody at the dispositional stage of a juvenile proceeding. *In re M.B.*, 147 Vt. 41, 45, 509 A.2d 1014, 1017 (1986).

Although this Court requires a finding of unfitness, we have held that the failure to use the word "unfit" does not necessarily preclude a finding of unfitness in fact, where the balance of the

court's decision leaves no room for doubt. In *In re E.B.*, 158 Vt. 8, 603 A.2d 373 (1992), the parents argued that the court improperly terminated their rights without first making a specific finding, supported by clear and convincing evidence, that the parents were unfit and incapable of caring for their children. The trial court in that case did not use the word "unfit," stating simply that "[b]ecause of the parents' complete failure to maintain regular contact with the boys and their highly unstable and unpredictable lifestyle, it is not likely that they will be able to resume their parental duties toward these children within a reasonable period of time, if ever." *Id.* at 14, 603 A.2d at 377. We held that such language sufficed, even without the "magic words."

■ In the present case, the court not only fails to state that the mother is unfit, but its conclusions do not allow the inference of unfitness. First, the court's findings concerning the husband, E.L., are sparse. The court recites that E.L. was convicted for a sex offense, that he was subsequently charged with violations of his sex offender treatment program and with violating probation restrictions by contacting children, and that "[t]here is conflicting testimony about when [E.L.] resides with [the mother] and the children." The court noted that a hearing was to be set in the future. On that factual predicate, the court concludes that "[E.L.] is likely, without acknowledging his problem and successful treatment, to reoffend. [Having t]he children in the home with him will place them at extreme risk of sexual abuse in the future." The findings do not adequately support this conclusion.

■ Second, even if the court had made findings adequate to support its conclusions about the danger E.L. poses, it did not state that other options to protect the children were unavailable—in short, that relinquishment of custody was necessarily dictated by the mother's marriage to a known sex offender. There is no question that the consistent failure to protect children is an indicator of parental unfitness. See *In re C.M.*, 157 Vt. 100, 103, 595 A.2d 293, 294–95 (1991) (failure of mother to protect daughter from abuse by father supports CHINS finding as a matter of law). But making findings as to when failure to protect becomes unfitness is a vital function of the trial court

and one that it did not perform in this case. Where the trial court does not make an explicit finding of unfitness, and the record does not remove all doubt that the court's findings effectively amount to a determination of unfitness, the order cannot stand. *In re M.B.*, 147 Vt. at 45, 509 A.2d at 1017; see also *In re R.M.*, 150 Vt. 59, 71–72, 549 A.2d 1050, 1058 (1988) (no dispositional findings on the record).

■ Although the court's findings are inadequate to support a conclusion of parental unfitness, we do not agree with the mother that the remedy for the court's inadequate findings is necessarily a different disposition. The findings that the court did make about the mother's conduct and habits, together with what we know about E.L., suggest the usefulness of an additional review proceeding by the family court prior to determining custody. Such additional proceeding will be particularly useful, given the unusually long period that has elapsed since the disposition order was entered and the fact that the protective supervision of SRS apparently terminated in May 1991.* It also appears from the record that no eighteen-month review has ever been conducted, despite the requirement for such review in 33 V.S.A. § 5531. Had such a review been conducted, it might have afforded all parties an opportunity to be heard on the question of the mother's potential readiness to resume custody, and, more broadly, would have allowed the court to examine the issues mandated for periodic review under § 5531. We therefore remand this matter to the trial court for further proceedings in accordance with this opinion and for determination of the issues enumerated in 33 V.S.A. § 5531(d).

■ In the interest of judicial economy, we address the mother's next argument, which will be germane if the court on remand finds her unfit and issues an order maintaining the present custodial status with the father of A.M. and the grandmother of C.A. and J.A. See *In re Taft Corners Associates, Inc.*, 160 Vt. 583, 593, 632 A.2d 649, 654–55 (1993) (in interest of judicial economy, Court may reach issues likely to reoccur

---

* The Chittenden Family Court so determined in a May 27, 1993 order, following a limited remand ordered by this Court for the purpose of clarifying the intent of the disposition order.

508

on remand). The mother argues that the court was barred from transferring custody of the children from her to another parent or to a grandparent because the governing statute does not allow for transfer of custody to another relative. See 33 V.S.A. § 5528(a). As to A.M., whose custody was transferred to her natural father, it might first appear, upon finding the child a CHINS, the court could have simply "[p]ermit[ted] the child to remain with his parents." 33 V.S.A. § 5528(a)(1), i.e., the father. The purpose of § 5528(a)(1), however, is to maintain the status quo. Because the father was not the custodian before the CHINS proceeding, the father did not qualify under the statute, even though he was a "parent."

■ The court did have authority under 33 V.S.A. § 5528(a)(3)(B), upon finding a child to be a CHINS, to:

(3) Transfer legal custody, or guardianship over the person . . . to any of the following:

. . . .

(B) Any individual operating a foster or group home licensed as required by law to receive such child, or any other individual *found by the court to be qualified to receive and care for the child* . . . . (Emphasis supplied.)

The statute does not exclude parents or grandparents from the class of individuals "found by the court to be qualified to receive and care for the child," and the father and grandmother were not necessarily ineligible custodians.

The court, however, could act under this provision only after finding the "other individual" to be qualified under the statute. Such findings are essential. It is especially vital for a court whose order will drastically affect family rights and responsibilities to speak clearly, to explain its reasoning, and, more fundamentally, to justify its decision.

The court did not make adequate findings. The court's findings about the father of A.M. and his parents, who were central to the placement, were that the father "resides with his parents in a neat and tidy home and child services, if needed, would be provided to assist [the father] and his parents to provide a good, nurturing and happy home."

As to J.A. and C.A., the court states that "[t]he natural grandmother . . . has volunteered to provide a secure protective and nurturing environment for her grandchildren until such time as their father may be prepared to provide a home for them. [The grandmother's home] has been examined and [is] appropriate for the placement." The court's statement that the home "has been examined" falls short of the statute's requirement that the court, in its own words, find the person taking custody to be qualified.

Again, we do not hold that the custodial placements were improper as a matter of law, but simply that the court did not make findings and conclusions adequate to assure this Court that the new custodians will meet the statutory standards. If, on remand, the court concludes that the mother is unfit, any order as to custody shall conform to the requirements of this opinion.

*Reversed and remanded for further proceedings in accordance with this opinion.*