685 A.2d 1095 (1996)
In re J.D.
No. 95-552.
Supreme Court of Vermont.
September 6, 1996.
*1096 Charles S. Martin and Mark Sullivan, Law Clerk, of Martin & Paolini, Barre, for appellant mother.
Robert Appel, Defender General, and William A. Nelson, Appellate Attorney, Montpelier, for appellee juvenile.
Before ALLEN, C.J., and GIBSON, DOOLEY, MORSE and JOHNSON, JJ.
JOHNSON, Justice.
The mother of J.D. appeals from a decision of the Washington Family Court awarding custody of the child to his grandmother, following a previous ruling that J.D. was a child in need of care and supervision (CHINS). We affirm.
J.D. is a fourteen-year-old boy who has lived with his paternal grandmother in Vermont for various periods of time since birth, and continuously since early 1995. His mother and father have had a chaotic relationship, and J.D. moved around frequently. The father sexually abused two of the mother's young children; in 1982 those children were removed from the mother's home due to her failure to protect them. The mother divorced the father and married a career serviceman in California.
In 1994, the mother and J.D. moved to Vermont, where the mother showed interest in renewing the relationship with the father, who had been paroled and was living in Vermont. But the relationship between the mother and father thereafter was punctuated *1097 by angry episodes, accusations of abuse, and fierce battles over custody of J.D., culminating in the filing of a CHINS proceeding in September 1994. The court described the impact of the multifaceted conflict on J.D. as follows:
As a direct result of [the mother's] actions and decisions, [J.D.] has been shuttled back and forth in a confusing manner ..., has undergone a change of name and sense of identity in an atmosphere of chaos, has been thrust in the middle of a contentious custody battle, has been exposed to the risk of manipulation and exploitation from [the father], and has suffered major dislocations in otherwise ordinary relationships with his brother, stepfather, and grandparents on both sides, not to mention [the mother] herself.
The mother has experienced mental health problems and was described by the court as "an emotional, volatile person who can become angry quickly and act impulsively." The court found that the mother acknowledged that reunification with J.D. was not a present possibility. The court made extensive findings about the father's abusive childhood, his risky behaviors, and his failure to address or obtain help in managing his pedophilia.
The court's findings addressed in detail the grandmother's sympathetic attitude toward her son (J.D.'s father) and negative attitude toward the mother, but stressed that "[the grandmother] has done an admirable job of overcoming the past abuse in her own life and creating a stable home and family life with [her husband]."
The court's conclusions focused on its dilemma: (1) either custody with the grandmother and her husband, with whom J.D. appeared to have a positive relationship, but with whom the risk of harm from contacts with the father might be more likely and the chance of reunification with the mother might be less likely, or, as the Department of Social and Rehabilitation Services (SRS) recommended, (2) custody with SRS and a "neutral" foster placement (i.e., one not favoring either the mother or the father and grandmother), involving yet another disruption in a life that has seen constant disruption.
In its disposition order the court granted custody to the grandmother. The court imposed numerous conditions upon the custody award, aimed at protecting J.D. from the father, discouraging negative comments about the mother, and allowing SRS to closely monitor J.D.'s progress in the custodial setting. The mother's appeal followed.
The family court in a CHINS case must craft a disposition order that is "most suited to the protection and physical, mental and moral welfare of the child." 33 V.S.A. § 5528(a). The record strongly supports the conclusion that neither parent would be a suitable custodian for J.D. The court therefore was left to choose between granting custody to J.D.'s grandmother or to SRS, with placement in a foster home. The court was clear about the advantages and disadvantages associated with each option, and realistic in recognizing that neither would be risk-free. The court opted for an environment in which J.D. was comfortable and where the foster parents loved and supported him, whatever faults might be found in the environment as a whole. The court did more than acknowledge risks; it framed a comprehensive protective supervision order and included monitoring provisions whose efficacy the mother did not seek to challenge.
The mother first argues that the court violated 33 V.S.A. § 5501(a) when it "effectively terminated" her parental rights by granting custody of J.D. to his grandmother, because reunification of the family a major goal of the Juvenile Actis not likely to occur under the court's order. The premise of the mother's argument is incorrect. She assumes that the grandmother and the father will attempt to take her son away from her. But the court's findings do not support the mother's assumption, and she does not explain why or how the court's findings are erroneous. See In re J.S., 153 Vt. 365, 371, 571 A.2d 658, 661 (1989) ("The juvenile court's decision will stand on appellate review unless the record indicates that the court exercised its discretion for clearly untenable reasons or to an extent clearly unreasonable.").
*1098 Moreover, the court did not ignore the antagonistic relationship between the mother, on the one hand, and J.D.'s father and grandmother, on the other. The court was aware of the potential dangers posed to J.D. by the father, as well as the grandmother's tendency to side with her son against the mother. In light of these factors, the court ordered that the grandmother and others in her household refrain from making negative comments about the mother or from discussing the court case with J.D., and directed the grandmother and her husband to support J.D.'s communication with and visits to his mother. The court ordered that the father have no contact with J.D. unless he actively participates in sex offender treatment and permits SRS to monitor his progress in the program. The court ordered that the grandmother and others in her household meet with SRS to review compliance with the court's order. It also authorized SRS to conduct random home visits to verify compliance.
Regarding potential violations of the court's order, it explicitly recited what would have been clear without enunciation: "Any party may seek modification of this Disposition Order on the grounds that the conditions of protective supervision are not being met." Thus, the court's order warns the grandmother and her family, including J.D.'s father, that literal compliance with the order is essential and reassures the mother that she has redress if the order is violated.
The mother next argues that the court erred in ruling that the grandmother was qualified to receive and care for J.D. Under 33 V.S.A. § 5528(a)(3)(B), the court may award custody to any individual, including grandparents, if the court finds that the individual is "qualified to receive and care for the child." The findings may not be perfunctory. In re C.A., 160 Vt. 503, 508-09, 630 A.2d 1292, 1296 (1993). In that case we faulted the court's conclusory statement that the grandmother's home had been examined and was appropriate for placement. Id. at 509, 630 A.2d at 1296. The court in the present case supplied the detail missing in C.A. It found that the grandmother had created a stable home and family life, maintaining a full-time job but also spending time and effort to care for others in her family. The court also found that the grandmother's husband was an important presence in the household, helping to enforce household rules and create stability. Based on these and other findings, the court concluded:
[The grandmother] has shown throughout [J.D.'s] life that she has always been ready to care for him, and this kind of abiding commitment is important. She has overcome great misfortune in her own life, and after a difficult past is now the center, together with her husband ..., of a strong family group that has a lot of love and commitment to its members, and that engages for the most part in constructive family activities and interactions. [J.D.] benefits from her grandmotherly love and nurturing, and from the grandfatherly relationship he has established with [grandmother's husband], who is respected by all members of the family and who is primarily responsible for enforcement of household rules.
The findings were amply supported by the testimony of witnesses familiar with the household. Evidence supported the finding that J.D. appears to be thriving at school, in part because of the grandmother's and her husband's support of J.D.'s special education program. His special education teacher testified positively about J.D.'s relationship with his grandmother. The SRS worker who prepared the disposition report stated that the grandmother and her husband "love and care" for J.D. and share activities with him, and noted that living with them has "many, many benefits" for J.D. In his testimony, J.D. expressed love for both his grandmother and her husband.
The mother also argues that the court failed to find that the grandmother was qualified, because it found that she would be qualified only if she adhered to the court's numerous conditions to her continued custody. The court did not, however, conclude that the grandmother lacked the present qualifications to obtain custody of J.D. As the quoted findings and conclusions indicate, the court made a positive determination that the grandmother is in fact qualified. At the *1099 same time it recognized that placement with the grandmother involves risks, but the court's candor about those risks is not a disqualification of the grandmother.
The mother next argues that the court erred in rejecting the SRS disposition recommendation and formulating a plan of its own. In determining initial custody, the court was not obligated to accept the recommendation contained in the disposition report. See 33 V.S.A. § 5528 (outlining court's options at disposition). Indeed, there is little purpose in conducting a disposition hearing if the result is predetermined by SRS. We have never held that the family court may not reject an SRS recommendation; rather, we have held that a court may not direct SRS to place a child in a foster home, when SRS is the child's legal custodian. In re G.F., 142 Vt. 273, 279, 455 A.2d 805, 808 (1982). In the present case, the court chose not to award legal custody to SRS.
The SRS case plan does deserve great respect, and the court was cognizant of its duty to explain in detail why it was not following the SRS recommendation. Evidence that J.D. will benefit from the security and continuity offered in his present custodial setting was abundant, as was evidence that his grandmother and her husband were devoted caregivers.
The mother has not demonstrated that the court's decision was an abuse of its discretion. Juvenile proceedings often involve difficult predictions about the future. Best judgment, rather than perfection, is our standard. The court in the present matter has thoroughly and thoughtfully explained its decision, and has warned that failure to comply with the court's numerous conditions will trigger a prompt reconsideration of this placement, upon motion of J.D., SRS, or the mother.
Finally, the mother also has failed to show that the court abused its discretion by denying her motion to amend the judgment, or in the alternative, grant a new trial. She filed the motion approximately one month after the disposition order issued, and alleged several violations of the disposition order. The court noted that "[a]djustments to conform to the requirements [were] not unexpected," and concluded that the problems did not justify a change in disposition. The court emphasized, however, that it expected "strict compliance" with the disposition order, and stated once again that "any party may seek modification in the future on the grounds that the conditions are not being met."
Affirmed.