*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-204

SEPTEMBER TERM, 2012

| | |
|---|---|
| In re M.W., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Bennington Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 8-1-10 Bnjv |
| | |
| | Trial Judge: Karen R. Carroll |

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights with respect to her daughter, M.W. We affirm.

M.W. was born in October 1998. In February 2010, M.W. was placed in the custody of the Department for Children and Families (DCF) on an emergency basis as the result of accusations that her father had sexually abused her. M.W. reported that her father had been sexually assaulting her on a daily basis since she was in the first grade. During the course of the investigation, M.W. also alleged that her brothers had sexually abused her. Father admitted to the abuse, was convicted of a lewd and lascivious behavior with a child, and was sentenced to a prison term of ten to fifteen years. Mother stipulated to a finding that M.W. was a child in need of care and supervision (CHINS). At the CHINS hearing, the Superior Court, Family Division, found that mother had not fully protected M.W. from abuse by her siblings and had taken an approach of support for the siblings rather than M.W.

In April 2010, the court approved DCF's disposition plan, which had a goal of reunification with mother. The plan called for mother to participate in a number of services, including individual counseling, family counseling, and a program to broaden her awareness of the effects of sexual abuse. The court ordered twelve hours per week of supervised visits between M.W. and mother. Visitation was cut in half to six hours per week pursuant to a motion by the State to which mother did not respond. In April and May 2010, M.W. showed signs of suicidality.

In September 2010, DCF initiated a delinquency proceeding concerning M.W.'s brother, A.W., based on allegations that he sexually assaulted M.W. He admitted to a reduced charge of lewd and lascivious conduct and was placed on probation in DCF's custody. At the time of the termination hearing, A.W. was living in a residential treatment program and participating in a

sex offender treatment program. Mother contested the case plan, arguing that A.W. should be placed with her, even though she was still seeking to have M.W. returned to her care.

In December 2010, M.W.'s attorney moved the court to suspend M.W.'s visits with mother. The motion was based, in part, on unproductive joint counseling sessions between mother and M.W., which often ended in shouting matches in which mother made inappropriate comments, and on the opinion of M.W.'s therapist that continued visitation with mother would result in M.W.'s victimization because of mother's divided family loyalties. The parties agreed to the therapist's recommendations, and, thus, since the end of 2010, with the exception of a single in-person visit, mother has had only telephone and computer contact with M.W.

In early 2011, M.W. was in a foster placement with her maternal aunt and uncle. Mother objected to the placement because of her severely strained relationship with her brother and sister-in-law. Mother blamed her sister-in-law for M.W.'s disclosures about A.W.'s abuse, once again insinuating that the allegations were false despite the evidence to the contrary.

In June 2011, DCF filed a petition to terminate father's and mother's parental rights, citing, with respect to mother, her failure to successfully follow through with any of the services required for reunification to occur. Specifically, DCF cited the unsuccessful family counseling as well as mother's failure to participate in mental health counseling or to complete a parenting course.

In September 2011, M.W.'s maternal aunt and uncle asked that M.W.'s placement with them be terminated because of their concerns that M.W. was "grooming" the couple's daughter. DCF changed the placement at the family's request. Shortly thereafter, M.W.'s paternal aunt and uncle living in California expressed an interest in taking M.W. into their home. M.W. visited their home, and the interstate placement process resulted in approval of the placement. M.W. moved into the home during the termination proceedings, which took place over three days in February and March of 2012. The father voluntarily relinquished his parental rights before the termination hearing was held.

Following the termination hearing, the court concluded that mother's failure to make progress toward reunification amounted to a substantial change of circumstances and that M.W.'s best interests militated in favor of terminating mother's residual parental rights. The court noted that even though mental health counseling was critical for mother, given her conflicted feelings over the sexual abuse of M.W. by family members, her attitude toward participating in such counseling had been "obstinate and difficult" over the two years since M.W. had been removed from her custody. The court found that, rather than assisting M.W. to overcome the devastating circumstances she had experienced, mother had in fact set M.W. further back in her recovery and "not done a single thing to assist her daughter to heal from the horrible effects of childhood sexual abuse." Regarding M.W.'s best interests, the court recognized that M.W. and mother loved each other, but that mother had failed to play a constructive role in M.W.'s life because of her failure to protect her from abuse, her ongoing doubts about the abuse, and her insinuations that M.W. was responsible for the breakup of the family. Given these family dynamics and mother's failure to engage in a process aimed at

changing those dynamics, the court concluded that mother would not be able to resume her parental duties within a reasonable period of time.

On appeal, mother first argues that the court's termination decision must be reversed because the court based its decision, in part, on its speculative finding that M.W. is in a stable, pre-adoptive home. Mother contends that while the paternal aunt, in a moment of deep emotion before M.W. had even moved into her home, expressed a desire to adopt M.W., there is no evidence at this stage that she and her husband would actually do so. According to mother, given the extremely short duration of the California placement at the time of the termination hearing, it was entirely speculative to find that M.W. was in a stable, permanent home.

We find no merit to this argument. The court's decision to terminate mother's parental rights was based primarily, indeed almost exclusively, on mother's failure to engage in counseling services that would allow her to empathize with and support her daughter as M.W. recovers from sexual abuse by family members. Emphasizing M.W.'s desire and immediate need for a permanent home with a supportive family, the court found that after two years mother was not even involved in the long-term process required for her to be in a position to provide that home.

The court noted that, "by all accounts," M.W. was with a supportive family that could provide her with a permanent home. This finding accurately reflected the evidence in the record. But even if we found the finding to be speculative and no current permanent adoptive placement existed, there would be no basis to disturb the court's termination decision. See In re E.B., 158 Vt. 8, 15 (1992) (noting that "termination of residual parental rights does not depend on the existence of an alternative placement," and, in any event, "the court's decision focused on whether the parents were capable of resuming their parental duties within a reasonable period of time, rather than on the quality of the preadoptive home"); see also In re A.F., 160 Vt. 175, 178-79 (1993) ("[E]rroneous finding does not require reversal where other evidence supported termination of parental rights.") (citing In re C.M., 157 Vt. 100, 103 (1991).

Mother also argues that the evidence does not support the court's finding that she does not play a constructive role in M.W.'s life. In support of this argument, mother notes evidence that she and M.W. love each other, that they still contact each other by telephone and online, and that both DCF and the current foster parents recognize the importance of maintaining the relationship between mother and M.W. According to mother, the court should have considered how legally severing that relationship would further tear the family apart and exacerbate M.W.'s feelings of guilt for having broken up the family.

Again, we find no merit to this argument. The record, including testimony from various counselors and caseworkers involved with M.W. and her mother, supports the findings underlying the court's conclusion that, on balance, the court cannot find that mother plays a constructive role in M.W.'s life. In particular, the court found that, notwithstanding mother's and M.W.'s love for each other, M.W. has had some positive contact with her mother, and much unproductive, difficult contact since the case began; that mother has doubted her daughter's claims of abuse even in the face of strong evidence to the contrary; that mother has made M.W.

3

feel she is responsible for the breakup of the family and has disparaged people whom the child loves; that mother still has not made it clear to M.W. that she supports M.W.'s decision to disclose the sexual abuse; that mother at this time is incapable of showing empathy and compassion to M.W. and M.W. cannot rely on her mother for the support that she needs.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

_____
Beth Robinson, Associate Justice

4