*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-005

SEPTEMBER TERM, 2012

| | |
|---|---|
| In re D.B., C.B., N.B. and T.B., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Franklin Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 50/51/52/53-5-09 Frjv |

Trial Judge: Linda Levitt

In the above-entitled cause, the Clerk will enter:

Father appeals an order of the Franklin Superior Court, Family Division, terminating his parental rights with respect to his four children, D.B., C.B., N.B., and T.B. The State opposes the appeal, and the children join in the State's brief. We affirm.

The unchallenged family court findings reveal that the four children, born between June 2004 and August 2008, were placed in the custody of the Department for Families and Children (DCF) in May 2009. Between 2006 and 2008, DCF received eight reports of suspected child abuse and neglect concerning the family. Among the reports were instances of the children found unattended in public places in the early hours of the morning and an incident in which the oldest child suffered a gash on his head as the result of his father throwing a toy at him to teach him a lesson. Father also abused mother and threatened to kill her. In 2008, father was placed on probation based on a conviction for unlawful mischief. He had previously been convicted of cruelty to animals and simple assault. In January 2009, father was incarcerated after violating his probation by threatening to kill a certain DCF social worker and also mother and himself if the children were taken from him. Mother was unable to handle the children on her own and she entered into a voluntary care agreement that was extended through May 2009. That same month, the State filed a children in need of care or supervision (CHINS) petition. The children were placed in DCF custody, and father was restricted to supervised contact. Upon his release from jail, father was discovered at the family home in violation of his probation and was returned to jail.

In July 2009, both parents stipulated to a finding of CHINS as to all four children. At the September 1 disposition hearing, the court returned custody of the younger three children to mother with conditions, while continuing DCF custody over the oldest child. Father objected to certain facts in the disposition report, but did not object to the ultimate goal of reunification with mother.

Shortly before father was released from jail at the end of December 2009, mother sought and obtained a relief-from-abuse (RFA) order that prohibited father from abusing, or having contact with, her or the children. Three weeks after father was released from jail, he violated the RFA order by staying at the family home and having contact with mother and the children.

Found hiding in the house by police, he was charged with another violation of the order in February 2010 and incarcerated. He was charged with a third violation for continuing to contact mother from jail. In April 2010, he pled guilty to the three violations and received a six to twenty-four month sentence with a minimum release date of August 5, 2010 and a maximum release date of January 27, 2012.

In November 2010, the three younger children were returned to DCF custody because mother was unable to parent them. In May 2011, the mother voluntarily relinquished her parental rights to all four children, and the following month DCF filed a petition to terminate father's parental rights. Father was released from jail in September 2011.

The termination hearing was held October 25-26, 2011. Following the hearing, in a December 1 decision, the family court ordered termination of father's parental rights. The court concluded that father's ability to parent his children had stagnated, if not regressed, and that the best interests of the children supported termination of his parental rights. The court found that father had played an entirely negative role in his children's lives, that he had no insight into how his parenting had adversely affected his children, that he still blamed DCF and others for his predicament, and that he had failed to address domestic violence and anger management issues that led to the children being taken into DCF custody.

On appeal, father first argues that the termination order must be reversed because the evidence supporting the family court's finding of stagnation involved factors beyond his control. Father states that the court impermissibly relied upon physical and economic factors, such as his being unemployed and not having his own home, which were a direct result of his being incarcerated for over two years and released only about one month before the termination hearing was held. Father cites out-of-state cases for the proposition that a parent's incarceration cannot be a determinative basis for a finding of parental unfitness. See, e.g., In re Cody T., 2009 ME 95, ¶ 28, 979 A.2d 81 (stating that "a parent's incarceration, standing alone, does not provide grounds for the termination of parental rights," and that, in considering parental fitness of incarcerated parents, courts must focus on whether parent can provide nurturing parental relationship using means available rather than on whether parent can show ability to provide physical and economic support for child). According to father, "[b]ecause a parent cannot be judged on acts that are impossible for him to perform, the consideration of a person's fitness to parent must be in the context of assessing conduct based on what is physically and legally possible for the particular incarcerated parent involved." Father asserts that in this case, the State directly impeded his ability to develop any kind of positive connection with his children by cutting off his communication with them. In father's view, if the court had considered the degree to which his satisfaction of case plan goals and his rehabilitation in prison had positively impacted his ability to parent, the court could not have found stagnation in that ability.

The family court may consider modification of a court-approved goal "only upon a showing of a substantial and material change of circumstances." In re A.G., 2004 VT 125, ¶ 17, 178 Vt. 7. The party seeking modification has the burden of showing not only the requisite changed circumstances but also how the proposed change serves the children's best interests under the relevant statutory criteria. Id. The decision of whether there has been a substantial and material change in circumstances is within the sound discretion of the family court. Id. ¶ 19. Most often, a change in circumstances is found when a parent's ability to care for the children has either deteriorated or stagnated. Id. Because stagnation is generally shown by the lack of sufficient improvement over time in the ability to parent, the key question is whether any

improvement substantially conformed to the expectations at the time of the CHINS proceeding and DCF's case plan. Id.

Here, in finding stagnation, the court noted that father had spent twenty-seven of the previous thirty-two months in jail and that he had recently been released from jail with no job, no transportation, and no home other than staying with his mother, who had abused him as a child and from whom he had been taken at the age of twelve. The court also noted that the RFA order prohibited father from contacting the children until the end of December 2011. Notably, father's extended incarceration resulting from his contact with the children and their mother on multiple occasions in violation of an RFA order was conduct also prohibited in the disposition case plan. Thus, father's conduct in violation of the case plan led to his incarceration, which, in turn, undermined his ability to reach a point in which he could care for his children.

In any event, the trial court's finding of stagnation was not limited to these findings. Elsewhere in its decision, the court found that father failed to follow through on domestic abuse, anger management, and mental health counseling despite his combative history that led to the removal of the children. See In re C.L., 151 Vt. 480, 484 (1989) (reiterating that "changes occurring prior to the most recent court order could not be used as the sole basis for a finding of changed circumstances, but that the previous time period could be used in conjunction with the more recent one to make such a determination"). The court found that notwithstanding the numerous certificates father received in prison for taking courses on parenting, such as those on shaken baby syndrome and substance abuse, among others, he continued to deny his role in the loss of his children and thus had no insight into how his parenting had adversely affected the children, who were experiencing a long, slow recovery from harm they suffered while under his and mother's care. These unchallenged findings demonstrate a substantial and material change of circumstances, even without taking into account that mother—the only parent for whom DCF had set a goal of reunification—had voluntarily relinquished her parental rights.

The case plan did not explicitly require father to engage in domestic abuse or anger management counseling, but it set forth a history of father's abusive and threatening conduct and the physical and emotional harm to the children resulting from that conduct. Accordingly, the case plan emphasized goals for father such as taking responsibility for his own decisions without blaming others for the consequences of those decisions and demonstrating an understanding of how his abusive behavior impacted his children's growth and development. The record supports the trial court's findings that father continued to blame others rather than take responsibility for his own actions and continued to lack insight as to how his prior conduct had harmed his children. In short, there was ample evidence of stagnation resulting from father's failure to comply with the case plan by having unsupervised contact with his children—conduct that was also in violation of an RFA order and thus led to his continued incarceration while his children were in state custody—and by failing to take responsibility for his own actions and gain insight into his role in losing custody of his children.

Father's second argument is that the court improperly grounded its finding of stagnation upon its conclusion that he would not be able to resume parental duties within a reasonable period of time. It is father's contention that his timely ability to resume parental responsibility is a factor to be considered vis-à-vis the best interests of the child only after the State meets the threshold of changed circumstances. According to father, collapsing the two-part test into a single step results in a failure to assess the parent's fitness apart from the children's best interests, in violation of the parent's due process rights.

The source of this argument is the family court's statement made at the end of its changed circumstances ruling that "[e]ven if he were to have contact with the children, a reasonable time for reunification has passed." According to father, this statement mirrors the most critical best-interests factor, thereby showing that the court committed a fundamental error by considering the children's best interests before independently concluding that father was unfit. In short, father asserts that "the court terminated his rights solely on an assessment of the children's best interest[s]" without first determining that he was unfit, in violation of his right to due process.

We reject this argument. First, the factual premise for the argument is not accurate. The family court plainly did not base its changed circumstances ruling solely on the best interests of the children. As discussed above, the court based that ruling primarily on father's failure over a significant period of time to address the issues that had led to his children being taken into DCF custody and on his continued lack of insight into how his previous actions harmed the children.

Second, father's due process argument is unavailing. In Santosky v. Kramer, 455 U.S. 745, 747-48 (1982), the United States Supreme Court held that "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." According to the Court, the heightened standard is justified because "until the State proves unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship." Id. at 760. Here, the family court at the termination proceeding may not have explicitly stated that father was an unfit parent, but father's inability to parent the children was established throughout the CHINS proceedings and reaffirmed by the family court's findings under a clear and convincing standard at the termination hearing. Father stipulated at the merits hearing in July 2009 to a finding of CHINS as to all four children. Moreover, he did not object to a disposition plan placing his oldest child in DCF custody and the three younger children conditionally in mother's custody with a goal of reunification only with mother. See In re J.H., 156 Vt. 66, 71 (1991) ("The parental unfitness test must be met before [DCF] can initially be awarded custody of a child."); see also In re C.A., 160 Vt. 503, 505 (1993) (noting that absent finding of unfitness, court "may not remove a child from a parent's custody at the dispositional stage of a juvenile proceeding"). In effect, he acknowledged his inability at that time to parent his children. See In re A.W., 164 Vt. 412, 417 (1995) (noting that parties' stipulation at disposition hearing to State custody of children "precluded the parents from complaining that the court made no finding of parental unfitness"); In re J.H., 156 Vt. at 71 (noting that where mother was party to initial disposition hearing and stipulated to State custody, she could not complain at eighteen-month review hearing "that no finding of unfitness was made regarding her").

At the termination hearing, the first step of the two-step inquiry required the family court to consider whether there were changed circumstances. With respect to father, particularly in light of mother's voluntary relinquishment of her parental rights, the issue was whether he had made progress under the case plan and would be able to parent the children. As discussed above, the family court's findings concerning father's lack of progress in addressing the issues that had led to DCF custody of the children, which are unchallenged and supported by clear and convincing evidence, demonstrate that changed circumstances existed because he was still unable to parent the children nearly two and one-half years after they were removed from their parents' care. Cf. In re E.B., 158 Vt. 8, 13 n.* (1992) (concluding that there was no need to resolve parties' dispute as to whether parents' CHINS stipulation discharged State's burden of proving parental unfitness at termination hearing because family court's findings, supported by

4

clear and convincing evidence, adequately demonstrated parents' inability to care for their two sons). During the CHINS proceedings, the State presented substantial evidence of father's violent and threatening conduct—conduct that prevented him from parenting his children and that, at least indirectly, resulted in the State taking custody of his children. Moreover, clear and convincing evidence presented at the termination hearing supported the family court's findings and conclusions that father continues to lack insight into his role in the children being placed in State custody, that he has made little progress in reaching a point where he can care for the children, and that there is no likelihood he will be able to resume his parental duties within a reasonable period of time from the perspective of the children's needs. In short, father's inability to parent his children has been established throughout the CHINS proceedings. There is no due process violation.

This case is very similar to In re K.F., 2004 VT 40, ¶ 7, 852 A.2d 584, where the father claimed that the family court erred by not taking into account that the State had failed to provide him with services and visitation while he was incarcerated. As here, the disposition plan did not contemplate reunification with the father because he was incarcerated at the time of the disposition hearing, and the father did not appeal the family court's initial disposition order. Id. ¶ 9. We rejected the father's argument that the court improperly terminated his rights by relying on factors beyond his control, such as his incarceration, insofar as the father had been unavailable to his child due to his incarceration and criminal behavior and had not played a constructive role in the child's life. Id. ¶ 12. Similarly, the record in this case supports the family court's findings that father never played a constructive role in his children's lives, has been absent from their lives due to his criminal behavior and resulting incarceration, and has neither adequately addressed the issues that led to the children's removal nor gained insight into the harm he caused the children.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

_____
Beth Robinson, Associate Justice