VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      24-AP-108

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

NOVEMBER TERM,   2024

| | |
|---|---|
| State of Vermont v. Michael V. Page*    } | APPEALED FROM: |
| } | Superior Court, Windham Unit, |
| } | Criminal Division |
| } | CASE NO. 125-1-19 Wmcr |
| | Trial Judge: John Treadwell |

In the above-entitled cause, the Clerk will enter:

Defendant appeals his convictions of aggravated assault and lewd and lascivious conduct with a child. We affirm.

In October 2018, defendant's stepdaughter F.C. reported to her fifth-grade teacher that she was afraid to go home because defendant had thrown storage tubs at her during an argument. The teacher reported the disclosure to the Department for Children and Families (DCF). A DCF investigator, Erika Barrett, met with F.C. in the presence of the school counselor. During the interview, which was recorded, F.C. said that defendant had pushed boxes and totes on top of her. She stated that defendant imposed various punishments including spanking and having to stand in a corner. She said that she did not feel safe in her home, but she would probably feel safe if defendant were not there. The school counselor asked F.C. if she felt her privacy was respected in the house. F.C. described defendant walking into the bathroom while she and her older sister, C.C., were there, and commenting on seeing C.C.'s private body parts. The school counselor asked F.C. if defendant had "ever touched you or touched your siblings' bodies in a way that wasn't okay or made you feel uncomfortable?" F.C. responded that she didn't know about her siblings but "once to me. When I was a little bit younger. He told me never to tell anyone that he did it. He was rubbing my privates and I asked him to stop, and he didn't. And he's just like if it hurts tell me to stop and I already told him to stop." F.C. stated this occurred when she was five or six years old, and that defendant was rubbing her bottom private part.

Following this interview, a referral was made to the Brattleboro child advocacy center. A few days later, the director and interview specialist at the center, Alyssa Todd, interviewed F.C., who repeated her statements about what defendant had done to her. Todd also interviewed C.C.,

who did not disclose any sexual abuse. Defendant was subsequently charged with lewd and lascivious conduct with a child.[1]

The State moved for F.C.'s recorded statements to Barrett and Todd to be admitted at trial pursuant to Vermont Rule of Evidence 804a. Defendant opposed admission of the recorded statements, arguing that they were tainted and not reliable because the school counselor asked F.C. leading questions during the interview. The court found that the statements were admissible under Rule 804a because they were made when F.C. was under the age of twelve, were not taken in preparation for a legal proceeding, F.C. was available to testify at trial, and the time, content, and circumstances of the statements provided substantial indicia of trustworthiness.

Just before trial was scheduled to begin in April 2023, C.C. disclosed for the first time during a trial preparation interview that defendant had touched her upper and lower private parts when she was in the shower and in his bedroom. Based on this disclosure, the State moved to continue the trial and amended the information to add two charges of aggravated sexual assault and another count of lewd and lascivious conduct with a child.

The case was tried in October 2023. On the first day of trial, a Monday, defense counsel informed the court that he had received a new disclosure from the State the previous Friday. The disclosure stated that F.C. recalled C.C. regularly being in bed with defendant. F.C. was jealous of their close relationship and asked if she could go in bed with defendant. Defendant said that she "would need to be naked." Defense counsel moved to exclude this information, arguing that the State failed to timely disclose it. The State argued that it had only learned of the new disclosure two days before it informed defense counsel. The court denied the motion to exclude the information.

At trial, the State presented testimony from Barrett and Todd, and played their interviews with F.C. for the jury. F.C. then testified. After a series of introductory questions, the prosecutor asked F.C., "Did there ever come a time when [defendant] touched you in a way that wasn't okay with you?" Defense counsel objected that the question was leading. The court overruled the objection. The prosecutor then said, "So you've made a report. You made a report, fair to say when you were in fifth grade?" F.C. replied affirmatively. The prosecutor stated, "I don't want to talk first about any sexual touching . . . . Did you make a report about something that made you feel unsafe?" F.C. described defendant spanking her and her siblings, forcing them to stand in the corner, and treating her younger sister roughly. The prosecutor then asked if she recalled speaking to a DCF investigator in fifth grade, and if she remembered what she talked about in that interview. F.C. described defendant touching her vagina over her clothes when she was five or six years old. She also testified that defendant would watch her shower. She testified that she saw defendant touch C.C.'s breasts while C.C. was sitting on his lap. C.C. and defendant were close and C.C. would sleep in the bed with defendant. F.C. stated that she was jealous of their relationship and asked if she could sleep with them. Defendant told her that she had to be naked.

On the second day of trial, the State presented testimony from F.C.'s mother, a licensed clinical social worker, and C.C. C.C. testified that while her mother was at work, she would care for her younger sister J.C., who was an infant at the time. She would put J.C. to sleep in the bedroom used by defendant and her mother and try to leave, but defendant wouldn't let her. He would make her lie on the bed, put on a television show, and touch her vagina inside and outside

---

[1] The State amended the information in March 2019 to add two counts of voyeurism. These counts were dismissed on the first day of trial.

her body. This started when she was ten or eleven years old and continued until defendant was removed from the house. She testified that defendant would sit on the toilet while she was in the shower and try to touch her. She testified that on one occasion, she woke up with defendant on top of her, and that her vagina hurt afterwards, although she did not see his penis. She stated that she did not disclose these incidents during her initial interview because defendant told her not to tell and she was scared of what he would do to her family.

Defendant testified that he never touched F.C. or C.C. inappropriately or had them sleep in bed with him. He denied that he ever threw boxes at F.C. or spanked the children as a form of discipline, though he admitted that he told them to stand in a corner.

The jury found defendant guilty of all charges. The court imposed an aggregate sentence of fifteen years to life plus fifteen years. This appeal followed.

Defendant first argues that the trial court erred in admitting F.C.'s recorded statements to DCF investigator Barrett about the abuse. Defendant argues that the court's finding that F.C.'s statements about the abuse bore sufficient indicia of trustworthiness was clearly erroneous because the statements were elicited by leading questions.

Vermont Rule of Evidence 804a permits the admission of out-of-court statements made by a person under the age of twelve if the court finds that (1) the statements are being offered in a proceeding where the child is a putative victim of certain crimes, including lewd and lascivious conduct with a child under 13 V.S.A. § 2602; (2) the statements were not taken in preparation for a legal proceeding; (3) the child is available to testify; and (4) "the time, content, and circumstances of the statements provide substantial indicia of trustworthiness." V.R.E. 804a(a)(1)-(4). This exception to the hearsay rule was created "because child victims are often unable to repeat the facts of the abuse in court because of the intimidation of the process." State v. Gallagher, 150 Vt. 341, 346 (1988) (quotation and alteration omitted). The exception " 'evinces a strong legislative intention to safeguard the right of confrontation while at the same time curing the frequent problem of lack of corroboration caused by the traditional hearsay rules.' " Id. at 347 (quoting Reporter's Notes, V.R.E. 804a).

The trial court has broad discretion in deciding whether to admit evidence under Rule 804a, and we will not reverse its decision "unless there has been an abuse of discretion resulting in prejudice." State v. Willis, 2006 VT 128, ¶ 20, 181 Vt. 170 (quotation omitted). We will affirm the court's determination that hearsay statements are trustworthy "if it is supported by the findings, which must be supported by credible evidence in the record." State v. Reid, 2012 VT 65, ¶ 20, 192 Vt. 356.

Defendant argues that the court's finding of trustworthiness is clearly erroneous because it found that "neither interview involved improperly leading or suggestive questioning." We are unpersuaded by this argument. The court did not find that there were no leading questions at all; it simply concluded that they did not improperly taint the interview. The record supports this finding, as it shows that F.C. did not simply answer "yes" or "no" or parrot the school counselor's questions. The court further found that Barrett followed the forensic interview model from the National Child Advocacy Center, and that F.C. was engaged during the interview, followed the interview rules, and corrected Barrett during the interview. The court also found that F.C. made consistent disclosures to both Barrett and Todd, F.C.'s body language

and tone during the interviews were appropriate,[2] and there was no evidence of fabrication or coercion. These findings are supported by the record and in turn support the court's conclusion that F.C.'s statements were trustworthy. See id. ¶¶ 31-32 (concluding that use of leading questions did not appear to taint overall disclosures and therefore did not overcome determination that child victim's statements bore substantial indicia of trustworthiness); State v. Bergquist, 2019 VT 17, ¶ 14, 210 Vt. 102 (affirming finding of trustworthiness based on expert testimony that conduct of interview was "reasonably sound," victim's word choice and body language supported credibility, victim was resistant to leading questions when asked, and victim made reasonably consistent and at times graphic disclosures).

Furthermore, defendant does not challenge the admission of F.C.'s interview with Todd, during which F.C. disclosed the same incidents as she had previously described to Barrett. We have held that the improper admission of a child victim's hearsay statements does not require reversal when, as here, the testimony was cumulative and the child testified. See State v. Babson, 2006 VT 96, ¶ 11, 180 Vt. 602 (mem.) (holding that improper admission of child's statements to doctor in sexual assault trial was not plain error, in part because it was merely cumulative to testimony of child victim, who testified to abuse in detail at trial and was subject to cross-examination); Gallagher, 150 Vt. at 349 (holding that improper admission of child victim's statements to physician about sexual abuse was harmless error where physician's testimony was cumulative and child was available to testify).

Defendant also argues that his convictions must be reversed because the prosecutor improperly led F.C. through her testimony. This argument is unavailing. Vermont Rule of Evidence 611(c) permits leading questions on direct examination of a witness "as may be necessary to develop [the witness's] testimony." The court did not abuse its discretion in overruling defendant's objection to the question, "Did there ever come a time when [defendant] touched you in a way that wasn't okay with you?" Leading questions are frequently required to develop child witness testimony "about sensitive or embarrassing matters," and the question was properly directed at focusing F.C.'s attention on the primary issue at trial. In re C.M., 157 Vt. 100, 104 (1991) (rejecting argument that examination of child consisted of improperly leading questions because questions were appropriate for child testifying about sexual abuse by father). Defendant did not object below to any of the other questions he now alleges were leading and has therefore failed to preserve this issue for our review. See State v. Shippee, 2003 VT 106, ¶ 10, 176 Vt. 542 ("In order to claim error on appeal, a defendant is required to make a timely objection to the admission of evidence, and if it is not apparent from the context, he or she must state the specific ground for the objection."). We will not address whether the other questioning constituted plain error because defendant does not claim plain error on appeal. See State v. Brown, 2010 VT 103, ¶ 16, 189 Vt. 88 (declining to conduct plain-error analysis of unpreserved issue where defendant did not assert plain error on appeal).

Next, defendant argues that the trial court abused its discretion by allowing F.C. to testify that defendant said she "would need to be naked" to sleep in defendant's bed like C.C., because the State failed to promptly disclose this statement to the defense. Vermont Rule of Criminal Procedure 16 requires the State to disclose "any written or recorded statements and the substance of any oral statements made by the defendant" to defendant's attorney "within a reasonable

---

[2] Defendant argues that the court erred in finding that F.C.'s body language was appropriate because the interview with Barrett was not videorecorded. This finding is not clearly erroneous because Todd's interview with F.C. was videorecorded and the trial court therefore had a basis to assess F.C.'s body language.

time." V.R.Cr.P. 16(a)(2)(A). "To establish reversible error, however, defendant must show both a violation of the rule and resulting prejudice." State v. Streich, 163 Vt. 331, 349 (1995). Defendant has not met that burden here. The trial court found that the State met its obligation under the rule because it learned about F.C.'s additional allegations the Wednesday before trial began and disclosed them to defense counsel that Friday. Defendant has not demonstrated that the two-day delay was unreasonable under the circumstances. Moreover, defendant has failed to explain how an earlier disclosure "would have affected his defense strategy or made it more viable." Id. at 350.

Finally, defendant argues that the cumulative effect of the alleged errors denied him a fair trial. While the trial court has discretion to grant a new trial based on "the cumulative effect of numerous concerns, no one of which can be characterized as reversible error, when the court is convinced that a miscarriage of justice ensued," State v. Heath, 162 Vt. 618, 619 (1994) (mem.), defendant did not seek a new trial on that basis here. Even if defendant had raised this claim below, it would fail: "because we have determined no prejudice resulted from any of the circumstances identified by defendant, there can be no resulting cumulative prejudicial effect." State v. Noyes, 2021 VT 50, ¶ 46, 215 Vt. 182.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Karen R. Carroll, Associate Justice


_____
William D. Cohen, Associate Justice

5